INTERNATIONAL CHEMICAL WORKERS UNION, LOCAL NO. 566, Appellee,

v.

MOBAY CHEMICAL CORPORATION, Appellant.

No. 84–1050.

United States Court of Appeals, Fourth Circuit.

Argued Aug. 28, 1984.

Decided Feb. 27, 1985.

Sprouse, Circuit Judge, dissented and filed opinion.

J.S. Francis, New Martinsville, W. Va. (Brennan & Francis, New Martinsville, W. Va., on brief), for appellant.

Salvatore J. Falleta, Gen. Counsel, International Chemical Workers, Akron, Ohio, for appellee.

Before WINTER, Chief Judge, SPROUSE, Circuit Judge, and BUTZNER, Senior Circuit Judge.

BUTZNER, Senior Circuit Judge:

Mobay Chemical Corporation appeals from a district court's order denying its motion to dismiss the amended complaint of the International Chemical Workers' Union, Local 566, for lack of jurisdiction. Mobay also assigns error to the district court's entry of summary judgment vacating, on the ground that the arbitrator exceeded his authority, a part of the award that sustained the discharge of an employee. We hold that the district court had jurisdiction and that the award is valid.

I

Mobay and the union are parties to a collective bargaining agreement, which, among other things, provides for qualification of employees for production jobs, the right of management to discharge for just cause, and the arbitration of grievances. Sherri Hill, the grievant, had been hired as a chemical operator and, like other new employees, began on the utility crew.

Hill bid into the polycarbonate department in April, 1979, classified as a B operator, and remained there until March, 1980. She then bid into an A operator position in the iron oxide department. However, while training for this position, she disqualified herself and returned to the utility crew. When no one bid for an iron oxide B operator position in June, 1980, Mobay assigned Hill to that job. She failed a test to qualify for the position and returned to the utility

crew. She was subsequently assigned to an opening in the polyester I department.

Following the established testing procedure after 90 days on the job, Hill was given a test by her supervisor to determine her progress in the polyester I training. Hill failed that test, as well as a retest conducted at her request by a different supervisor in the presence of a union representative.

Mobay interpreted the bargaining agreement to authorize discharge after an employee was disqualified three times from performing production work. It sent Hill a discharge letter, which, after referring to her three disqualifications and the pertinent provisions of the bargaining agreement, concluded:

> Therefore, in light of this third disqualification, whether due to either your inability or unwillingness to demonstrate job performance, you are separated from employment effective February 20, 1981.

Hill and the union filed an unjust discharge grievance. Mobay refused to alter its decision. The dispute resulted in arbitration proceedings before an impartial arbitrator with over 25 years of experience, selected by the parties from a panel furnished by the Federal Mediation and Conciliation Service.

The arbitrator held that the bargaining agreement did not authorize discharge for a third disqualification. Consequently, he ruled that Mobay's letter did not provide an adequate basis for discharging Hill.

The arbitrator also held that all parties had consented to proceed in arbitration on the basis of additional specifications filed by Mobay disclosing Hill's unsatisfactory work record. He found that the proof supported the specifications and that the evidence was sufficient for a just cause discharge. Inasmuch as the bargaining agreement recognized management's right to discharge for just cause, he sustained the discharge. In reaching this conclusion, he found that a person with Hill's deficiencies should not be working in the production phase of a potentially dangerous chemical plant. He also pointed out that rein-

statement of Hill because of the inadequate discharge letter would not preclude prompt, justifiable discharge for cause.

The arbitrator concluded, however, that Hill's discharge of February 20 should be made effective July 13, 1981, the date Mobay filed its specifications detailing the unsatisfactory work record that became the basis for the arbitrator's decision. Accordingly, he awarded back pay.

The district court held that the discharge letter and Hill's grievance constituted the entire scope of the submission to the arbitrator. In its view, Mobay's specification of the employee's deficiencies or "bill of particulars" was intended to be no more than an explanation of the disqualifications, and it was not an enlargement of the cause for discharge beyond the three disqualifications. The court concluded that the arbitrator went beyond the scope of the submission, contrary to his authority under the bargaining agreement. It upheld the award of back pay but vacated the part of the award that sustained the discharge.

## II

■ Mobay's assignment of error to the district court's denial of its motion to dismiss for lack of jurisdiction is without merit. The union's complaint alleged jurisdiction under section 301 of the Labor-Management Relations Act, 29 U.S.C. § 185 and the Arbitration Act, 9 U.S.C. § 10. It sought modification of the award and other appropriate relief. The union filed its complaint and gave notice within the three-month period prescribed by 9 U.S.C. § 12.

Mobay moved to dismiss on the ground that 9 U.S.C. § 10 authorizes vacation but not modification of the award. The court then granted the union leave to amend the prayer of its complaint to seek vacation of that part of the award that sustained Hill's discharge.

Section 301 of the Labor-Management Act conferred jurisdiction on the court. *Textile Workers Union v. Lincoln Mills,* 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957); *Textile Workers Union v. Ameri-*

*can Thread Co.,* 291 F.2d 894 (4th Cir. 1961). The court could grant the union the relief to which it was entitled even though specific demand was omitted from the original complaint. Federal Rule of Civil Procedure 54(c).

Moreover, the district court's permission to amend eliminated any ambiguity about the relief the union sought. Although the amendment was filed after the three-months period specified in 9 U.S.C. § 12, it related back to the date of the original complaint because it arose out of the same occurrence and simply amplified the prayer for "other relief." Rule 15(c). *See* 6 Wright and Miller, *Federal Practice and Procedure* § 1497 (1971).

### III

The collective bargaining agreement reserved management's right to discharge for cause. Consequently, the arbitrator did not stray beyond the bargaining agreement to find a contractual basis for Hill's discharge. The critical issue is whether the parties' submission empowered the arbitrator to invoke this clause. In short, did the parties submit to the arbitrator simply the issue involving three disqualifications, as the district court held? Or, did the submission include the issue involving specifications of Hill's work record that disclosed just cause for discharge, as the arbitrator held?

The parties, not the arbitrator, must define the issues. The submission is "the source and limit" of the arbitrator's power. *Textile Workers Union v. American Thread Co.,* 291 F.2d 894, 898 (4th Cir.1961). The record does not disclose that Mobay and the union presented the arbitrator with a formal submission agreement. But this was not a fatal omission, for the agreement to arbitrate particular issues need not be express. It may be implied or established by the conduct of the parties. *Ficek v. Southern Pacific Co.,* 338 F.2d 655, 656 (9th Cir.1964).

In May, on the first day of arbitration, the parties could not agree on the issue. They resolved this dilemma by agreeing to postpone the arbitration until July. In the meantime, Mobay, pursuant to the accord reached by the parties, furnished the union and the arbitrator the specifications of the incidents that Mobay contended gave it just cause for discharging Hill under the management rights clause in the bargaining agreement. The specifications include Hill's absence from her job site, altercations with a supervisor and a fellow employee, absenteeism, lateness, safety violations resulting in her injury, and a problem with drugs, which unfortunately resulted from her attempts to lose weight. In July, after the union had an opportunity to prepare its defense of the incidents set forth in the specifications, the parties introduced evidence on the issues pertaining to both the disqualifications and the specifications.

The arbitrator stated that the parties consented to submit for his decision the incidents set forth in the specifications to show just cause for discharge as well as the disqualifications mentioned in the letter of discharge. In his opinion, he said:

A question might arise as to the right of an arbitrator to consider matters beyond those contained in the letter of discharge. Aside from the fact that the matter proceeded by agreement of all parties after the first day of the arbitrator's hearing, there is precedent for considering such matters.

Excerpts from the transcript of the arbitration, which are set forth in the margin, amply support the arbitrator's finding of consent by both parties to the issues that he decided in making his award.[1]

---

1. At the conclusion of the arbitration session on May 26, 1981, the following colloquy took place:

    [Union attorney]: My point is this: I feel now after hearing one witness, hearing the argument of counsel, that we have got to go back and prepare a defense. I think we were misled—not deliberately by any means—but we were misled in thinking what was going to be the issue. Now, we know it, and what I'd like to urge is that this matter be continued, give us a chance to prepare.

    [Mobay attorney]: ... [S]ince you made that statement, I think you will agree that when I talked to you last Friday, I told you

Contrary to the conclusion expressed by the district court, the specifications, sometimes called a "bill of particulars," were intended by the parties to be much more than an explanation of the reasons for disqualification. The specifications included incidents that occurred when Hill was not working in the jobs for which she was disqualified. These incidents were irrelevant to the disqualifications, but they were relevant to the issue of just cause. The parties introduced proof about them, and the arbitrator did not exclude them in reaching his decision.

Furthermore, the union offered to stipulate to the three disqualifications. One disqualification was voluntary, the other two resulted from failure to pass qualifying tests. Had the parties intended to limit the submission to the disqualifications there would have been no reason for the specifi-

cations of other deficiences. The disqualification issue could have been readily determined by interpretation of the provisions of the bargaining agreement dealing with the effect of disqualifications. Instead, with the acquiescence of all parties, the hearing lasted three days and generated 475 pages of transcript, much of which is testimony about the specified incidents that were not relevant to the disqualifications.

Hill's grievance stated in response to the inquiry about the nature of the grievance, "unjustly discharged." Although Mobay initially wrote she was discharged for the disqualifications, nothing in the bargaining agreement precluded the parties from agreeing to submit to the arbitrator reasons for discharge not mentioned in the discharge letter. The bargaining agreement does not require that all reasons be

exactly what I had to show here when you offered to stipulate three disqualifications. And I said, ... I'm still going to have to show the reasons for just cause for dismissal; and I'm going to have to show these safety infractions.

 * * * * * *

[Union attorney]: I think you said you wanted to show the reasons for the disqualifications.

[Mobay attorney]: —the reason for just cause for discharge.

 * * * * * *

[Union attorney]: ... I would like to have some specificity relating to the acts that are going to be relied on by the Company. In other words, I would like to know that on July 12th, 1980, contrary to the policy of the plant she did such and such and such and such. I have got to have at least that much to go on.

 * * * * * *

What I think you need to give me is what is going to convince the Arbitrator. ... Whatever you feel you are going to need to sustain your burden of proof that this was a discharge for just cause, just let me see them.

 * * * * * *

[Arbitrator]: [A] list of dates and just maybe a one-sentence statement related to each date as to what the infraction—whether it resulted in a warning or not. Maybe a third column if there was a warning notice or counselling session or suspension or whatever that might appear in the third column. The understanding would be that in the proof of your case, you would be confined to these items. Would that do it?

[Union attorney]: That would be perfectly satisfactory.

[Mobay attorney]: ... There were various things we did not want to bring out which I think would be embarrassing and I've already alluded to those this morning. We will put these things in, if you want.

 * * * * * *

[Union attorney]: I'm perfectly ready and before the hearing, I will make sure that Miss Hill is ready for them.

When arbitration resumed on July 21, 1981, the proceedings commenced as follows:

[Arbitrator]: Just to review where we are [the union attorney] indicated at the prior hearing that he had insufficient notice of the Company's basis for discharge and that deprived his client of due process in defending against the allegations of the Company in this arbitration....

I received in the mail on July 13th, ... a list of specifications.... Now, may I ask [the union's attorney] if he now feels that the matters raised last time have been satisfied.

[Union attorney]: We do. I feel that we are sufficiently apprised now of what the Company's position is as to the reasons for the discharge.

[Arbitrator]: And as far as you are concerned ... the Company may proceed from the point where we left off last time?

[Union attorney]: Yes. I think perhaps along the lines that we mentioned at the close of the hearing.... You said: "In the proof of the case, you will be confined to these items."

[Arbitrator]: All right.

[Union attorney]: With that understanding, we are ready to meet the proof.

set forth in the letter.[2] As the union attorney acknowledged at the July arbitration session, the specifications provided by Mobay stated the reasons, and the union was prepared to answer them.

■ If the union objected to the arbitrator's consideration of Mobay's specifications, it had an obligation to present its challenge to the arbitrator. The union could not voluntarily engage in the arbitration of the issues submitted to the arbitrator and then attack the award on grounds not raised before the arbitrator. *United Steelworkers v. Smoke-Craft, Inc.*, 652 F.2d 1356, 1360 (9th Cir.1981); *Piggly Wiggly Operators' Warehouse, Inc. v. Piggly Wiggly Operators' Warehouse Independent Truck Drivers Union*, 611 F.2d 580, 584 (5th Cir.1980); *Ficek v. Southern Pacific Co.*, 338 F.2d 655, 657 (9th Cir.1964).[3]

■ Courts are not empowered to restrict the scope of the authority the parties have conferred on the arbitrator. In *United Steelworkers v. Enterprise Wheel and Car Corp.*, 363 U.S. 593, 598, 80 S.Ct. 1358, 1361, 4 L.Ed.2d 1424 (1960), the Court stated the following principles: "A mere ambiguity in the opinion accompanying an award, which permits the inference that the arbitrator may have exceeded his authority, is not a reason for refusing to enforce the award." Furthermore, a court cannot assume without reason that an arbitrator "has not stayed within the areas marked out for his consideration." The award should be enforced when "[i]t is not apparent that [the arbitrator] went beyond the submission."

■ Tested by these principles, there is no justification for drawing the inference that the arbitrator may have exceeded his authority. Nor is it apparent that he went beyond the submission. The award is valid. We, therefore, find it unnecessary to address Mobay's other assignments of error. The judgment of the district court is reversed, and the case is remanded for entry of an order enforcing the award.

SPROUSE, Circuit Judge, dissenting:

I agree that the district court had jurisdiction in this matter but dissent from that portion of the majority opinion which reverses the district court and which instructs it to enforce the arbitrator's award.

Mobay discharged Hill for failing to qualify for positions within the plant—a reason not permitted by the collective bargaining contract. Its discharge letter stated:

This letter is written in confirmation of our discussion of Friday, February 20, 1981.

For the past year you have been training for qualification on three (3) different operational jobs. You have failed to qualify on all three (3), the third being Polyester I. As you have been earlier advised, you were hired for chemical operational duties. A failure to be able to perform this work satisfactorily and safely would make you ineligible for employment.

In accordance with Article 25, Job Posting, Section 4, of the Labor Management Agreement between Local 566 and Mobay Chemical Corporation, provisions and penalties are included for two (2) disqualifications. A third disqualification is not allowed by the Agreement. In such a situation, it is apparent the person is either unable or unwilling to perform an operational job.

Therefore, in light of this third disqualification, which due to either your inability or unwillingness to demonstrate job performance, you are separated from employment with Mobay Chemical Corporation effective February 20, 1981.

---

**2.** The arbitrator noted: "No criticism is intended regarding the Company's method of discharge. We suspect management was trying to be considerate of Miss Hill's feelings and reputation as well as her future employment."

**3.** In *Ficek,* the Court said:

The rule is sometimes stated in terms of waiver: A claimant may not voluntarily submit his claim to arbitration, await the outcome, and, if the decision is unfavorable, then challenge the authority of the arbitrators to act.

Mobay, therefore specifically discharged Hill under Article XXV of the collective bargaining contract. There is, however, no authority to discharge under Article XXV. It provides in pertinent part:

> In the event that he does not qualify on the permanently assigned job, he will again be returned to Utility (non-bid) and lose all of his Production Department seniority and shall be permitted to bid on a Production Department vacancy only after a period of one (1) year from the date of his most recent disqualification.

The arbitrator clearly recognized this and correctly interpreted the contract, stating:

> On the other hand, failure to qualify in a job into which one has bid has never been a basis for discharge in this arbitrator's experience or reading....

> .    .    .    .    .

> Nevertheless, at the May 26 hearing, we had an employee who, whether or not she had given the Company sufficient reason to discharge, was in fact discharged under a provision of the Labor Agreement that is not related to discharge.

Having reached that inevitable conclusion, the arbitrator could have decided only that the discharge was improper. The contract provides the four step grievance procedure that is common to most labor contracts. In the third step of a grievance proceeding, both the union and company must state their positions in writing. Section 3 of Article XXIX provides in pertinent part:

> In the event that no satisfactory settlement of the alleged grievance is arrived at in Step 2 of this procedure, the alleged grievance shall be reduced to writing.... Management shall answer the grievance in writing within five (5) scheduled days ... of the date of presentation.

In this case, the union stated its position that Hill was wrongfully discharged. Mobay replied:

> After further review and consideration of all the facts in this case, Management cannot agree to the adjustment desired.

The separation was due to her disqualifying three times as a chemical operator.

There was no question as to the parameter of the issue. It, however, remained unresolved through step four of the grievance procedures, so Article XXIX required submission of the articulated issue to an impartial arbitrator. The arbitrator properly could no more substitute his version of the issue than he could alter the terms of the contract. In doing so, he simply "dispense[d] his own brand of industrial justice." *United Steelworkers of America v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 597, 80 S.Ct. 1358, 1361, 4 L.Ed.2d 1424 (1960).

In the majority's view, however, the union assented to altering the submitted issue after arbitration proceedings had begun. I simply disagree. The union lawyer stated his understanding that the issue was only the propriety of Mobay's stated reason for discharge. He did not abandon that position but merely insisted on the right to rebut any other evidence which would be offered.

The arbitrator obviously felt that Hill should not continue in her position with Mobay, and rendered that Solomonic industrial justice without regard to whether his decision comported with the contract, the formulation of the arbitration issued by the parties, or established principles of labor law. That resolve on his part could not have been clearer. He said:

> However, having said the foregoing, it is our opinion that no arbitrator should force an employer, particularly one who operates a potentially dangerous chemical plant, to rehire an employee such as Sherri Hill. In our opinion, Sherri Hill has very effectively demonstrated that she should not be working in the chemical industry, at least not in the production phase of it.

> .    .    .    .    .

The legal problem an arbitrator faces in light of the discussion up to this point is how to reconcile the inadequate basis for the discharge with the conclusion

that the employer should not be forced to continue the grievant in her employment.

By this language in his opinion, the arbitrator forcefully demonstrates that he realized that the employer must lose the arbitration issue as formulated by the parties, but felt that he must go behind that issue to render justice. He may well have been right that Hill was an undesirable employee, but that decision should have been made in a future arbitration proceeding upon the union's challenge in her discharge for "just cause" under Article III of the contract.

Arbitration is not restricted by the formal rules of procedure that bind courts. Certain basic rules of decision-making, however, must be observed even under the most informal dispute resolution procedure. One of the fundamental principles of labor law is that an arbitration award must be limited to the issues submitted by the parties. *Textile Workers Union v. American Thread Co.*, 291 F.2d 894 (4th Cir.1961). I agree with the district court that in this case the arbitrator did not so limit his award. The issue was framed by the discharge letter, the union's grievance, the company's denial of this grievance, and the submission to the arbitrator of the issues framed in the grievance. That issue was whether the company could discharge an employee for failures under Article XXV of the contract. The "just cause" required by Article III was prior to the arbitration hearing never articulated by the company to Hill nor to the union. If we were to affirm the district court and order Hill reinstated, and there indeed existed "just cause" to discharge Hill, Mobay could discharge her simply by complying with the contract and advising her of the reasons. There is no basis in the law, however, for an award to a party to an existing dispute based upon its prospects for winning a future arbitration on a different issue. The employer may have had just cause to discharge Hill but neither an arbitrator nor a court has the right to circumvent the admittedly informal, but, nonetheless essential rules governing arbitration.

In my opinion, the arbitrator based his decision on matters so extraneous to the issue submitted by the parties that his award failed to "draw its essence" from the agreement that he purported to interpret. *United Steelworkers of America v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 597, 80 S.Ct. 1358, 1361, 4 L.Ed.2d 1424 (1960); *Clinchfield Coal Co. v. District 28, United Mine Workers*, 720 F.2d 1365, 1368 (4th Cir.1983). I would affirm the district court.