In the Matter of the Arbitration Between Ronald DIGHELLO and By–The–Sea, Inc., Petitioners,

and

Lewis J. BUSCONI, and Lion Construction Co., Inc., Respondents.

Civ. A. Nos. B–87–167(RCZ), N–81–461(RCZ).

United States District Court, D. Connecticut.

Nov. 10, 1987.

**86**

Bernard Green, Green & Gross, P.C., Bridgeport, Conn., for petitioners.

F. Anthony Mooney, Hale and Dorr, Boston, Mass., for respondents.

## RULING ON PENDING MOTIONS

ZAMPANO, Senior District Judge.

This is another in a seven-year series of lengthy, acrimonious legal proceedings involving former business associates, Ronald DiGhello and Lewis Busconi. Their disputes revolve around the development and construction of a $66 million project on 165 acres of valuable land owned by the parties in Milford, Connecticut. Due to the discord and dissension between the two men, little if any progress has been made to improve or utilize the partially-built facilities on the property.

The parties' disagreements have spawned several lawsuits—both state and federal—which, in turn, have generated a myriad of motions, counter-motions, petitions, briefs, reply briefs, affidavits, counter-affidavits and other prolific moving papers. Despite valiant efforts by counsel, and lengthy discussions with state judges and this Court, the parties have tenaciously refused to resolve their controversies amicably. Their inane determination "to fight to the finish" is indeed unfortunate. Had the parties compromised their differences in a rational, businesslike way, as recommended by their counsel and the courts, the parcels in question long ago would have been successfully and profitably developed for condominiums, a golf course, and a marina.

In 1982 Magistrate Smith, noting that there were so many disputes between the parties "that merely to identify them would be a triumph in itself," held that the parties should arbitrate all their disagreements pursuant to their written contract entered into on April 29, 1981. *Ruling On Petition To Enforce Arbitration and Cross-Motion To Dismiss,* Civ. No. N–81–461 (D.Conn. Mar. 10, 1982). On October 5, 1982, this Court sustained the Magistrate's reasoned and thorough decision and ordered the parties to submit themselves to arbitration. *Ruling On Objection To Magistrate's Ruling,* Civ. No. N–81–461 (D.Conn. October 5, 1982).

After an abandoned appeal to the Second Circuit, and another round of legal maneuvers, arbitration finally was commenced before a panel of three arbiters in May 1984 and was concluded in January 1987. The Arbitration Panel filed its Award on February 11, 1987. Consistent with the pattern of prior conduct, the parties have now directed motions to this Court with the customary salvo of "paper."

Pending before the Court are Dighello's motion to vacate the Award, and Busconi's motions to confirm the Award and for further orders.

## DISCUSSION

### A. THE AWARD

The Arbitration Panel conducted forty days of hearings to resolve the disputes between the parties. The hearings were comprehensive and complete: the parties, represented by counsel, and their witnesses were fully heard, over thirty-eight volumes of transcripts were recorded, more than 300 exhibits were introduced, and extensive briefs and moving papers were submitted.

In a detailed, reasoned twenty-two page Award, the Arbitration Panel unanimously concluded, *inter alia,* that: (1) throughout DiGhello's business dealings with Busconi for the development and construction of the multi-million dollar project, DiGhello acted individually and through a network of corporate entities, which he owned and controlled, known as By–The–Sea, Inc.,

Luxury Properties, Inc., Brandy Incorporated–Milford, Millionaire, Inc., and Millstone Country Club, Inc.; (2) DiGhello substantially breached existing contracts and agreements by, among other things, failing to execute documents necessary for the construction of housing units, interfering with the delivery of building supplies, and designing a plan whereby Busconi would pay third parties for work never performed; (3) DiGhello's conduct was a chronicle of "obstruction, interference, and duplicity"; (4) Busconi was entitled to both monetary and equitable relief; (5) despite Busconi's claims of over thirty million dollars in lost profits and over seven million dollars in out-of-pocket expenses, many of his damages were not proved or not recoverable as a matter of law; (6) Busconi's allowable money damages were $5,648,677.20 plus "supplemental interest"; (6) nonmonetary relief to Busconi to enable him to complete the project as originally proposed would not be feasible because of several factors including zoning obstacles, the illegality under state law of the existing plan to sell certain buildings, and other unworkable aspects of the plan for development; (7) due to the property's complex and entangled state of affairs, the most sensible and suitable nonmonetary relief would be to grant Busconi partial specific performance "to effectuate as much of the original plan as may still be possible"; and (8) under the circumstances, DiGhello would be required to execute and deliver to Busconi certain corrective deeds, easements, declarations, assignments and other documents.

## B. DIGHELLO'S MOTION TO VACATE

DiGhello moves, pursuant to 9 U.S.C. § 10(d), to set aside the Award on three grounds: (1) the Arbitration Panel decided issues not submitted to it for resolution; (2) the orders of relief in the Award bind four of DiGhello's corporate entities that were not named as parties to the arbitration; and (3) the Award is incomplete, ambiguous, and contradictory.

### 1. Scope of Issues

■ Section 10(d) provides in relevant part that an award may be vacated "where the arbitrators exceeded their powers." Thus if an arbitration panel rules on issues not presented to it by the parties, it has exceeded its authority and the award must be vacated. *United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582–83, 80 S.Ct. 1347, 1353, 4 L.Ed.2d 1409 (1960); *Lackawanna Leather Co. v. United Food & Commercial Workers Int'l Union*, 692 F.2d 536, 538–39 (8 Cir.1982); *Piggly Wiggly Operators' Warehouse, Inc. v. Piggly Wiggly Operators' Union*, 611 F.2d 580, 583 (5 Cir.1980). However, Congress has indicated a strong preference for enforcing arbitration agreements, *see* 9 U.S.C. § 2; *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 22, 103 S.Ct. 927, 940, 74 L.Ed.2d 765 (1983), and it is well settled that a reviewing court's power to vacate an award is severely limited so that an award may be set aside only under the very narrow circumstances enumerated in § 10, or if it is "irrational" or "manifestly disregards the law." *See I/S Stavborg v. Nat'l Metal Converters, Inc.*, 500 F.2d 424, 430–31 (2 Cir.1974); *see also Andros Compania Maritima v. Marc Rich & Co., A.G.*, 579 F.2d 691, 703–04 (2 Cir.1978).

■ In determining whether an arbitration agreement covers a particular issue, all doubts must be resolved in favor of arbitration. *Metro Indus. Painting Corp. v. Terminal Construction Co.*, 287 F.2d 382, 385 (2 Cir.), *cert. denied*, 368 U.S. 817, 82 S.Ct. 31, 7 L.Ed.2d 24 (1961). Any issue that is "inextricably tied up with the merits of the underlying dispute" may properly be decided by the arbitrator. *See McAllister Bros. v. A & S Trans. Co.*, 621 F.2d 519, 522–23 (2 Cir.1980); *see also Nolde Bros., Inc. v. Local 358, Bakery & Confectionery Workers Union*, 430 U.S. 243, 254, 97 S.Ct. 1067, 1073, 51 L.Ed.2d 300 (1977). These general standards guide our analysis of the merits of DiGhello's motion.

Busconi's first request for arbitration on August 10, 1981, was limited to only three

matters: corrective deeds, condominium declarations, and a mortgage commitment. Relying on this written request, DiGhello argues that the arbitration proceedings during the years 1984 to 1987 covered numerous other issues and, therefore, the Arbitration Panel exceeded its powers under § 10(d). The claim is frivolous.

On October 5, 1982, this Court granted Busconi's motion to compel arbitration and ordered the parties to arbitrate their disputes "pursuant to the agreement of April 29, 1981." *Ruling On Objection To Magistrate's Ruling* at 3. That contract provided for an unrestrictive, plenary submission of "any disputes between the parties, either unresolved issues not affected by this Agreement or any future disagreements." *Partial Settlement Agreement As To Parcel "C"* (April 29, 1981).

■ In addition, on October 7, 1982, Busconi made demand upon DiGhello to arbitrate "any and all existing disagreements" as directed by this Court and as mandated by the agreement signed on April 29, 1981. The record of the arbitration proceedings reveals that both parties recognized the expansive scope of the matters being presented for resolution, and that issue was joined on each of them. Busconi's statement of claims exceeded fifty pages and covered every point of the disagreements between the parties. *See Plaintiff's Prehearing Statement*, 1–53 (May 1, 1984). On his part, DiGhello, in a lengthy statement of issues to be arbitrated, sought relief for alleged breaches by Busconi of almost every aspect of the parties' contracts and obligations for the development and construction of the project. *See Respondents' Statement Of Claims* at 1–14 (May 24, 1984). When specifically asked by one of the arbitrators at the commencement of the proceeding whether the arbitration was to cover "all the disputes" between the parties, DiGhello's counsel replied, "We are before the panel on all disputes involving this transaction." Tr. at 98–99. Thus, the Arbitration Panel's determination that the proceedings encompassed "all issues between the parties" without restriction or limitation, *Award* at 15, is more than amply supported by the record in this case.

### 2. *The Non–Signatories*

■ DiGhello next asserts that the Arbitration Panel exceeded its powers by considering and determining matters involving four of his corporations, namely Luxury Properties, Inc., Brandy Incorporated–Milford, Millstone Country Club, Inc., and Millionaire, Inc. (the "four corporate entities"). DiGhello does not challenge the fact that he "owned, controlled and dominated" the four corporate entities, but contends that, because they were not parties to the agreement to arbitrate, they cannot be bound by the rulings and orders set forth in the Award. The contention is without merit for several reasons.

First, it is important to note that, in ordering the parties to arbitrate their disputes "pursuant to the agreement of April 29, 1981," *see Ruling On Objection To Magistrate's Ruling* at 1, 3, this Court implicitly rejected all of DiGhello's objections to Busconi's motion to compel arbitration, including any judicially imposed limitation on the expansive scope of the parties' arbitration agreement. That agreement provides:

4. With respect to any disputes between the parties, either unresolved issues not affected by this Agreement or any future disagreements, the parties agree as follows:

(a) Neither shall commence litigation against the other in any court nor shall either seek any attachment of the real or personal property of the other, such rights of attachment being herewith expressly waived. *This specific provision shall apply to all entities owned or controlled by the parties hereto, including but not limited to LUXURY PROPERTIES, INC.;*

(b) In lieu of litigation, DIGHELLO and BUSCONI expressly agree to arbitrate any such disputes under the rules of the American Arbitration Association at Hartford.... (emphasis added)

DiGhello seeks to avoid the clear import of the language of § 4(a) relating to "all enti-

ties owned and controlled by the parties" by arguing that § 4(a) should not be read in conjunction with § 4(b). In effect he maintains that, while the corporate entities were required to forego litigation, only Di-Ghello and Busconi individually would be bound to arbitrate. This tortured interpretation of § 4 would mean that the corporate entities could neither litigate nor arbitrate disputes, a result that is untenable.

Moreover, adoption of DiGhello's construction of § 4 would abrogate one of the main purposes of the agreement to arbitrate. Paragraph I(1) of that agreement indicated that the parties intended to avoid litigating a then pending state court case which included as parties not only DiGhello but also the four corporate entities DiGhello now seeks to exclude from the Award's rulings and orders. *See* Complaint, *Busconi, et al. v. DiGhello, et al.*, Superior Court, Judicial District of Ansonia/Milford (October 31, 1980). The seventy-five page Complaint in that action covered virtually the entire spectrum of disputes which involved DiGhello and *all* his corporations.

Consequently, the arbitration agreement, far from manifesting an exclusion of Di-Ghello's four corporate entities, conclusively confirms the parties intention to include these non-signatories in the arbitration proceedings. *See Serv. Employees Union, Local 47 v. Commercial Property Servs., Inc.*, 755 F.2d 499, 506 (6 Cir.), *cert. denied*, 474 U.S. 850, 106 S.Ct. 147, 88 L.Ed.2d 122 (1985) (a non-signatory may be included in arbitration if its "rights or duties ... are stated in the terms and conditions of the contract"); *McAllister Bros.*, 621 F.2d at 524 (it is established law that "a party may be bound by an agreement to arbitrate even in the absence of a signature").

Second, the "pleadings" submitted by the parties at arbitration disclose that: (a) the four corporate entities were designated as respondents in the arbitration proceedings, *see Plaintiff's Prehearing Statement* at 2, 3; (b) DiGhello's counsel orally joined issue with each one of Busconi's claims for relief

including those relating to the four corporate entities, *see* Tr. 200 *et seq.;* (c) DiGhello's submission of claims referred to issues encompassing the acts of the four corporate entities, *see generally Respondents' Statement of Claims;* and (d) DiGhello's recitation of uncontested facts in significant respects acknowledges that he acted through "affiliated corporations," *see* Di-Ghello's *Statement of Facts.*

Thus, not only the contract to arbitrate but also the parties' submissions of the issues expressly empowered the Arbitration Panel to determine the rights, obligations and liabilities of the four corporate entities whose activities played major roles in the grievances presented for resolution. *See Int'l Chemical Workers Union v. Mobay Chemical Corp.*, 755 F.2d 1107, 1110 (4 Cir.1985) (when parties define the issues, the submission is the "source and limit" of the arbitrator's power); *Piggly Wiggly Operators' Warehouse, Inc.*, 611 F.2d at 584 (an arbitrator is authorized to decide questions raised by the parties' submissions of issues).

■ Finally, the Arbitration Panel found that the four corporate entities were "clearly intertwined" in the project, that they "executed or directly benefited" from the parties' agreements, that they were "clearly owned, dominated and controlled" by DiGhello, and that they were DiGhello's "alter egos." [1] *Barrowclough v. Kidder, Peabody & Co., Inc.*, 752 F.2d 923, 938–39 (3 Cir.1985) (non-signatories of arbitration agreements bound under common law and agency principles); *Fisser v. International Bank*, 282 F.2d 231, 234–35 (2 Cir.1960) (enforcement can be had against non-signatory who is merely instrumentality or "puppeteer" of a party bound by an arbitration clause). These findings are amply supported by the record, and in any event, are not subject to challenge on a motion to vacate. *Siegel v. Titan Indus. Corp.*, 779 F.2d 891, 892–93 (2 Cir.1985) (arbitrators' erroneous application of law not ground to

---

**1.** It is important to note that the Arbitration Panel, not this Court, has determined that Di-Ghellos' corporations were acting by and through him. Therefore, cases such as *Orion*

*Shipping & Trading Co. v. Eastern States Petroleum Corp.*, 312 F.2d 299, 301 (2 Cir.), *cert. denied*, 373 U.S. 949, 83 S.Ct. 1679, 10 L.Ed.2d 705 (1963), are distinguishable.

vacate an award); *Int'l Union of Elevator Constructors v. National Elevator Indus.*, 772 F.2d 10, 12 (2 Cir.1985) (general rule is that an arbitrator's decision will not be vacated "despite the fact he may have misinterpreted either the facts or the law").

### 3. *The Award*

DiGhello's final contention is that the award must be vacated because it is incomplete, ambiguous and contradictory. *See Bell Aerospace Co. v. Local 516*, 500 F.2d 921, 923 (2 Cir.1974). In support of this claim, he points out that the Arbitration Panel: (1) failed to valuate the land in question, *Award* at 13–14; (2) left unsettled the form and content of the corrective deeds, declarations, and other documents, *id.* at 16, 17; and (3) miscalculated damages. These alleged deficiencies, he argues, render the Award unenforceable and invalid under 9 U.S.C. § 10(d). The Court disagrees.

■ The general rule is that in order for an award to be final and definite, it must resolve all issues submitted to arbitration, and determine each issue fully so that no further litigation is necessary to finalize the obligations of the parties under the award. *Puerto Rico Maritime Shipping v. Star Lines, Ltd.*, 454 F.Supp. 368, 372 (S.D.N.Y.1978). An award must also be clear enough to indicate what each party is required to do. *Curaco v. Solitron*, 356 F.Supp. 1, 12 (S.D.N.Y.), *aff'd*, 489 F.2d 1313, *cert. denied*, 416 U.S. 986, 94 S.Ct. 2389, 40 L.Ed.2d 763 (1974).

■ The paramount inquiries before the arbitrators were the assessment of fault as between Busconi and DiGhello for the disintegration of the basic plan for the development of the project, and the type and scope of remedies most appropriate under the circumstances. Within the ambits of those two main subject matters were numerous sub-issues, some major and some minor, relating to the degree of culpability and the methodology for the measurement of the various components of damages. To resolve the main issues, and the related sub-issues, the Arbitration Panel was faced with the complicated and arduous task of collecting, sorting, and weighing innumerable facts and figures from the lengthy testimony of witnesses and the labyrinthine network of business dealings and documents involved in this case.

As set forth, *supra* at A, the Award fully adjudged the principal issue and sub-issues concerning liability. The failure to estimate the value of the property is not, as DiGhello asserts, a fatal infirmity in the Award. The arbiters expressly explored the question of land value and decided that, due to the lack of "competent evidence," the parties should be left "in their present position." *Award* at 13–14. This finding constitutes a definitive ruling grounded on the parties' failure to sustain their burden of proof on the sub-issue of valuation.

With respect to damages, the Award grants both monetary and equitable relief. The monetary appraisal was thoroughly considered and specifically determined. The formulae employed to assess compensatory damages and to compute interest are not reviewable on a motion to vacate. As stated in *Andros Compania Maritma*, 579 F.2d at 704:

> When arbitrators explain their conclusions ... in terms that offer even a barely colorable justification for the outcome reached, confirmation of the award cannot be prevented by litigants who merely argue, however persuasively, for a different result.

*See also Kurt Orban Co. v. Angeles Metal Sys.*, 573 F.2d 739, 740 (2 Cir.1978); *Orion Shipping & Trading Co. v. Eastern States Petroleum Corp.*, 312 F.2d 299, 300 (2 Cir.), *cert. denied*, 373 U.S. 949, 83 S.Ct. 1679, 10 L.Ed.2d 705 (1963).

■ Similarly, the essential orders relating to the nonmonetary relief were complete and unequivocal. Implementation of the orders directed toward the "partial specific performance" to which Busconi was entitled, *Award* at 14, 16, necessarily involved the preparation, execution, and delivery of certain documents, including deeds and declarations. Commendably, the Arbitration Panel in the first instance requested the parties to prepare the documents, but, in the event the parties failed

to agree, then the arbitrators themselves would draft the papers. This approach was reasonable and logical, and made clear that the Panel itself would act to implement the partial specific performance that had been ordered if the parties could not come to terms within the prescribed period.

The mere fact that certain acts were to be performed in the future to effectuate the Arbitration Panel's primary rulings does not make the nonmonetary relief any less "final" or "definite" than the monetary relief. The orders issued for the exchange of these indispensable documents were remedial in nature, were not expressly or implicitly prohibited by the terms of the arbitration agreement, and were well within the arbiters' authority and discretion to fashion appropriate relief under their broad mandate to resolve "all disputes" between the parties. *See Steelworkers v. Enterprise Corp.*, 363 U.S. 593, 597, 80 S.Ct. 1358, 1361, 4 L.Ed.2d 1424 (1960) (arbitrator must have flexibility in formulating remedies to reach a fair resolution of a problem); *Kallen v. Natn'l Union of Hospital & Health Care Employees*, 574 F.2d 723, 726 (2 Cir.1978) (award upheld where amount of payment to be made was adjustable based upon records to be produced); *Sverdrup/Aro, Inc. v. Int'l. Ass'n of Machinists*, 532 F.Supp. 143, 146 (E.D.Tenn. 1980) (absent restrictive language in arbitration agreement, an arbitrator has wide latitude to fashion appropriate remedies); *Mobil Oil Indonesia Inc. v. Asamera Oil Ltd.*, 487 F.Supp. 63, 66 (S.D.N.Y.1980) (arbitrators have wide discretion under a broad arbitration clause to mold remedies to the particular facts).

## C. BUSCONI'S MOTION TO CONFIRM

No sustainable grounds having been presented for vacature, modification, or

correction of the Award under 9 U.S.C. §§ 10, 11, *see Taylor v. Nelson*, 788 F.2d 220, 225 (4 Cir.1986); *Puerto Rico Maritime*, 454 F.Supp. at 371–72 (S.D.N.Y.1978), Busconi's motion to confirm is granted and judgment shall enter.[2]

## D. BUSCONI'S REMAINING MOTIONS

■ Busconi has filed several motions seeking to enforce, and expedite the orders issued by the Arbitration Panel.[3] Ordinarily, in the absence of a showing that a party has failed to comply with the terms of an arbitration award, this Court would not prescribe enforcement procedures or issue orders in aid of the judgment entered. However, the Court is deeply concerned that the lofty purpose of the arbitration process—the speedy, effective and inexpensive resolution of disputes—has been shamefully thwarted for years in this case and that, in the interest of justice, immediate judicial action to enforce the Award is warranted. Therefore, in view of the long history of disharmony between the parties and the obdurate conduct by DiGhello, as found by the arbitrators, the Court grants Busconi's application for the appointment of the members of the Arbitration Panel to be special masters, pursuant to Fed.R.Civ. P. 53. In this role, the arbitrators under the supervision of the Court will be empowered to implement the rulings and orders mandated by the Award. *See Island Creek Coal Sales Co. v. City of Gainsville*, 764 F.2d 437, 440–41 (6 Cir.1985).

Accordingly, it is Ordered:

1. That DiGhello's Motion to Vacate is denied;

2. That Busconi's Motion to Confirm is granted;

---

2. The arbitration clause in the instant case explicitly states that arbitration is to be governed by the rules of the American Arbitration Association. Rule 47(c) of the AAA provides that "[p]arties to these Rules shall be deemed to have consented that judgment upon the arbitration award may be entered in any Federal or State Court having jurisdiction thereof." This rule is binding on the parties. *See Paley Associates, Inc. v. Universal Woolens, Inc.*, 446 F.Supp. 212, 214 (S.D.N.Y.1978); *see also Murray Oil Prod-*

*ucts Co. v. Mitsui & Co.*, 146 F.2d 381, 382–83 (2 Cir.1944); *I/S Stavborg*, 500 F.2d at 426–27; *Harris v. Brooklyn Dressing Corp.*, 560 F.Supp. 940, 941–42 (S.D.N.Y.1983).

3. In an apparent effort to "cover all bases" in the event his motion to confirm is not granted, Busconi has filed motions for a survey, to modify, to remand, to sever, and for "other appropriate orders."

3. That judgment shall enter on the Award;

4. That Busconi, upon due notice, shall prepare and submit for the Court's approval an appropriate order appointing the three arbitrators as special masters to enforce, under the direction and supervision of the Court, the rulings and orders set forth in the Award;

5. That all remaining motions filed by Busconi are denied, without prejudice to renewal before the special masters.

SO ORDERED.