871 F.2d 23
 130 L.R.R.M. (BNA) 3092, 111 Lab.Cas. P 11,061
 BOWATER CAROLINA COMPANY, A DIVISION OF BOWATER, INC.,
Plaintiff-Appellant,
v.
ROCK HILL LOCAL UNION NO. 1924; Catawba Maintenance Local
Union No. 925; United Paperworkers International
Union, AFL-CIO, Defendants-Appellees.
 No. 88-3879.
 United States Court of Appeals,
Fourth Circuit.
 Argued Jan. 11, 1989.
Decided April 4, 1989.
 
 Hamlett Sam Mabry, III, Orville Gilbert Calhoun, Jr. (Haynsworth, Marion, McKay & Guerard, Greenville, S.C., on brief), for plaintiff-appellant.
 Jay Joseph Levit, Richmond, Va. (Michael Hamilton, United Paperworkers Intern. Union, Nashville, Tenn., Tony M. Jones, Rock Hill, S.C., on brief), for defendants-appellees.
 Before SPROUSE and CHAPMAN, Circuit Judges, and MOTZ, United States District Judge for the District of Maryland, sitting by designation.
 SPROUSE, Circuit Judge:
 
 
 1
 Bowater Carolina Company, a division of Bowater, Inc., appeals from the judgment of the district court granting summary judgment to Rock Hill Local Union No. 1924, Catawba Maintenance Local Union No. 925, and United Paperworkers International Union, AFL-CIO ("the Union") in Bowater's action to vacate a labor arbitration award on the grounds that the award exceeded the scope of the issues submitted to the arbitrator. We reverse.
 
 
 2
 The underlying arbitration involved John Truesdale, a Bowater millwright and a member of the Union, who suffered an on-the-job injury to his back on August 18, 1986, while working in Bowater's plant in Catawba, South Carolina. After referral to a physician, he was assigned to light duty but then was admitted to a hospital. He returned to work under medical restrictions on November 10, 1986, but again left work on January 2, 1987. Bowater thereafter refused to permit him to return to work, claiming that his physical condition presented an undue risk that he would reinjure himself.
 
 
 3
 Article VIII of the collective-bargaining agreement between Bowater and the Union outlines a five-step procedure for a resolution of employment grievances--four grievance steps and arbitration. After Bowater refused to permit Truesdale to return to work, the Union submitted a grievance that proceeded through the four steps of grievance without resolution. It was submitted to arbitration. Bowater and the Union jointly framed the arbitration issue: "Did the company violate Article XVIII of the current labor agreement by not allowing Grievant to return to work? If so, what shall the remedy be?"
 
 
 4
 Article VXIII of the collective-bargaining agreement provides in pertinent part:
 
 
 5
 An employee who is absent due to nonindustrial sickness and/or injury for twenty-one (21) days or more, or an employee who has been absent because of major surgery, back problems, concussion and the like is expected to provide the Company, at least four (4) days in advance of his/her planned return-to-work date, with a written statement from physician of his/her choice who is licensed to practice medicine. This statement is to be in response to a form letter and partial job description the employee is to obtain from the Industrial Relations Department and furnish to his/her physician. An employee absent less than twenty-one (21) days due to nonindustrial sickness and/or injury is expected to give the Company as much advance notice of their planned return-to-work date as possible, but not less notice than that defined in Article IX--Hours of Work. An employee absent seven (7) to twenty-one (21) days due to nonindustrial sickness and/or injury may be required to provide a physician's statement as provided above. The Company will rely upon the statement from the employee's physician, if required, in deciding whether or not to permit a return to work.
 
 
 6
 During the grievance steps and in arbitration, Bowater took the position that Truesdale suffered an industrial injury and that Article XVIII did not apply to him because it covers only nonindustrial accidents. Bowater further reasoned that it had the prerogative of requiring additional medical evidence in cases involving on-the-job injuries to determine whether injured employees were sufficiently recovered to return to work. The Union contended that Article XVIII covered Truesdale's back injury and required Bowater to permit Truesdale to return to work when he presented a written statement from a physician as specified in the Article's provisions.*
 
 
 7
 The arbitrator ruled that Bowater did not violate Article XVIII because it "applies only to nonindustrial and not industrial sickness or accident." He then stated: "That would appear to answer the issue framed by the parties but leaves the situation without a solution.... It appears, therefore, that the present dispute can only be finally resolved by determining whether there was cause to deny Grievant the right to return to work as a millwright." After reviewing the medical evidence, the arbitrator decided that Truesdale was able to return to work and ordered Bowater to reinstate Truesdale with seniority and back pay. In reaching that conclusion, he found that Bowater failed "to sustain its burden of proof that Grievant was not capable of performing his job duties as a millwright."
 
 
 8
 Bowater argues on appeal that the medical evidence relating to Truesdale's ability to return to work was submitted only as a contingent response to a possible arbitral finding that Article XVIII applied to industrial injuries. It urges that it presented the medical evidence to prove that Truesdale failed to establish his right to return to work according to the provisions of Article XVIII. It stresses that the arbitrator could have properly considered the medical evidence only if he had first determined that Article XVIII covered Truesdale's industrial injury.
 
 
 9
 Bowater contends, therefore, that the arbitration award is void because the arbitrator exceeded the authority granted to him by the parties. In sum, it points out that the parties narrowly defined the issues submitted to the arbitrator to include only an interpretation of Article XVIII of the collective-bargaining agreement and its application to Truesdale. The Union contends and the district court found, however, that the introduction of medical evidence concerning Truesdale's ability to return to work demonstrates that the parties agreed to expand the issues.
 
 
 10
 In International Chemical Workers Union, Local No. 566 v. Mobay Chemical Corp., 755 F.2d 1107 (4th Cir.1985), we stated:
 
 
 11
 The parties, not the arbitrator, must define the issues. The submission is "the source and limit" of the arbitrator's power. The record does not disclose that Mobay and the union presented the arbitrator with a formal submission agreement. But this was not a fatal omission, for the agreement to arbitrate particular issues need not be express. It may be implied or established by the conduct of the parties.
 
 
 12
 Id. at 1110 (citations omitted). We held in Mobay that the parties had agreed to broaden the issue for arbitration by submitting evidence that was irrelevant to the original grievance issue. Id. at 1110-12. The Union now relies on our Mobay holding to support its contention that the parties here agreed to expand the framed issues. The circumstances here, however, are completely different from those present in Mobay. In Mobay, the company attorney indicated to the union attorney, both prior to and during arbitration sessions, that he would present evidence on a broader issue than the issue that the parties had disputed during the previous steps of the grievance procedure, and the union attorney not only consented to the expansion but also offered rebuttal evidence on that issue. Id. at 1110-11. Here, Bowater and the Union did not discuss any issues except the narrow ones relating to the possible violation and remedy under Article XVIII, the same issues that remained intact during the preceding grievance steps. There thus was nothing in the conduct of the parties from which it could be implied that the parties agreed to arbitrate an issue other than the narrow one identified by the arbitrator.
 
 
 13
 Arbitration, of course, is not restricted by formal rules of judicial procedure. To retain its viability as a most useful tool in dispute resolution, however, it must be sufficiently guided by basic rules of decisionmaking to assure parties that the arbitrator will resolve only the disputes that they submit. Here, Bowater complains that, if it had been aware of the arbitrator's intention to decide the broader "just cause to deny the right to return to work" issue, it could have presented other evidence on that issue. We sympathize with that position. The arbitration process is not served by a rule that could prevent either party from fully presenting its side of the controversy.
 
 
 14
 The arbitrator addressed the alternative ground because "answer[ing] the issue framed by the parties ... leaves the situation without a solution." He did not find that the parties agreed to his consideration of the alternative ground. Moreover, no indication exists that the parties submitted the medical evidence to prove or to disprove alternate theories for Truesdale's reinstatement under contractual provisions other than Article XVIII. The introduction of the medical evidence plainly followed the narrow issue that the parties framed. Under Article XVIII, Bowater must "rely upon the statement from the employee's physician, if required, in deciding whether or not to permit a return to work." Evaluating the medical evidence was unnecessary because the arbitrator's decision that Article XVIII did not apply to industrial accidents completely resolved the Article XVIII issue. Bowater submitted the medical evidence only as a fall-back strategy in the event that the arbitrator decided that Article XVIII related to both industrial and nonindustrial accidents. We do not view the submission of that evidence as an agreement to revise or to expand the issues that the parties had submitted for arbitration.
 
 
 15
 Truesdale and the Union are not necessarily left without a forum for the resolution of the grievance. In our view, the decision that Article XVIII is not applicable to the dispute does not preclude the Union from pursuing Truesdale's complaint under other provisions of the collective-bargaining agreement that may be applicable in a grievance framed so that it would give both parties the opportunity to present facts supportive of their positions.
 
 
 16
 The judgment of the district court is reversed and remanded with instructions to vacate the arbitrator's decision.
 
 
 17
 REVERSED AND REMANDED WITH INSTRUCTIONS.
 
 
 
 *
 Two physicians, one reporting in October 1986 and the other in January 1987, stated that Truesdale could return to work only under restrictions. In February 1987, the same physicians reported that he could return to work without limitations or restrictions. Bowater took issue with the later medical reports, and the physicians, in responding to Bowater, indicated that Truesdale's condition simply had improved to the point where he could perform his work without any medical restrictions