**David LIVINGSTON, as President of District 65, United Automobile, Aerospace and Agricultural Implement Workers, AFL–CIO, Plaintiff,**

v.

**The NESTLE–LeMUR COMPANY, Defendant.**

**No. 84 Civ. 8233 (RWS).**

United States District Court, S.D. New York.

May 1, 1985.

Joseph S. Fine, Staff Counsel, Dist. 65, UAW, AFL–CIO, Eugene G. Eisner, New York City, for plaintiff.

Pearl & Chaiet, P.C., Jericho, N.Y., for defendant; Clifford P. Chaiet, Jericho, N.Y., of counsel.

## OPINION

SWEET, District Judge.

Plaintiff David Livingston, as president of District 65, United Automobile, Aerospace and Agricultural Implement Workers, AFL–CIO, ("District 65") has moved for summary judgment seeking enforcement of the arbitrator's award in District 65's dispute with the Nestle-LeMur Company ("LeMur"). The motion for summary judgment is granted.

**Facts**

District 65 and LeMur are parties to a collective bargaining agreement which controlled working conditions at LeMur's manufacturing plant in the Bronx. The terms of this agreement, which runs from June, 1982 until May 31, 1985, are not in dispute and include not only the terms of the June 1982 agreement but also various of the terms of collective bargaining agreements signed in 1971, 1974, 1976, 1978, and 1979 which were incorporated in the 1982 extension. Various of these provisions read as follows:

### SUB–CONTRACTING

The Employer may continue its present practice of subcontracting work. The Employer may sub-contract other work if it does not cause a layoff of employees for lack of work.

### NO MOVING

The Employer agrees that he shall not move any of its operations from its present location to any place beyond fifty miles from the present location or thirty-five miles from Columbus Circle whichever is greater.

In the event the Employer moves to a new location requiring extra travel time, severance pay for those employees who do not choose to transfer to the new location shall be paid in accordance with the severance pay formula provided for in individual supplements to this agreement.

The Employer shall reimburse employees who elect to go to the new location for the additional carfare required to travel to and from the new location. For those employees who had no carfare expense, the Employer shall pay only for carfare in excess of the New York City subway fare (round trip).

### SEVERANCE PAY

5A. In the event the Employer liquidates or discontinues the present opera-

tions, in whole or in part which would result in permanent layoff, for any reason whatsoever, he agrees that severance pay shall be paid to the employees in the following manner:

| Employees employed | | | | |
|---|---|---|---|---|
| Employees employed | " | 1 to 4 years | 1 week |
| " | " | 4 to 7 years | 2 weeks |
| " | " | 7 to 10 years | 3 weeks |
| " | " | 10 to 15 years | 4 weeks |
| " | " | 15 to 20 years | 5 weeks |
| " | " | 20 to 21 years | 6 weeks |
| " | " | 21 to 24 years | 7 weeks |
| " | " | more than 24 years | 8 weeks |

## SHUTDOWN

6. In the event of a shutdown, the Union will get sixty days notice to negotiate severance pay improvement.

## ADJUSTMENT OF DISPUTES

B. The Arbitrator, as hereinabove mentioned, shall be selected by both sides by mutual agreement. In the event both sides fail to mutually agree on an Arbitrator, within twenty-four (24) hours, either party may ask the American Arbitration Association to appoint an Arbitrator and such appointee shall be the Arbitrator in the matter involved. The decision of the Arbitrator shall be final and binding upon both parties and shall be fully enforceable. It is understood that the Arbitrator shall not have the power to amend, modify, alter or subtract from this agreement or any provision thereof...

### The Current Dispute

In October, 1983 LeMur decided to terminate production at the Bronx facility and "to contract out work that the bargaining unit employees had performed in the Bronx facility." (Def's Memo of Law at 4). In November, 1983 LeMur, allegedly pursuant to its obligation to give sixty days notice to the Union in the event of a shutdown, invited the Union to negotiate improvements in severance pay. District 65 claimed that LeMur's plans violated the "sub-contracting" and "No Moving" clauses of the contract, and, consequently, no agreement between LeMur and District 65

with respect to LeMur's severance pay obligations to the employees was reached. LeMur proceeded with its plans to have other companies produce the products which had been manufactured at the Bronx facility, and all employees at the Bronx plant were laid off between March and May 1984.

Pursuant to the arbitration clause of the contract, the parties submitted the following stipulated issue to Arbitrator Bertram Kupsinel:

Did the Company violate the collective bargaining agreement by shutting down its plant and thereupon using contractors to produce and/or process products formerly manufactured by said plant? If so, what shall be the remedy?

The Arbitrator's essential holding was as follows:

First of all, in deciding the issue presented, I conclude that the No Moving clause is immaterial. I conclude that this clause is operative only when *this* Company or an alter ego of *this* Company moves from the Bronx facility to a new location. There is no evidence that the Company moved to a new location and the evidence is clear that the firms which are now performing work which had been performed at the Company's Bronx plant are not alter egos or affiliates of *this* Company.

. . . . .

The real issue in this case depends on the construction of two provisions in the collective bargaining agreement which appear to be conflicting. If there were no reference to subcontracting in the agreement, there would be no dispute. The Company did shut down operations at the Bronx, in that it was more economical to have other firms do the work. The Company argues that it subcontracted before when the production of aerosol products became illegal and the Union did not grieve this subcontracting which resulted in layoffs. The Company concedes that the Parties recognized that the layoff was a result of legislation beyond the ambit of the collective bargaining process. The example of a fire

burning down the plant, in my view, is a different situation because the instant situation was instigated by the Company, whereas a fire (barring arson) is caused by a force beyond the Company's control.

The Company's argument is that "shutdown" in the severance pay clause means for any reason, including economic motivation. Once there is a shutdown, the severance pay clause comes into play and the subcontracting provision is meaningless. This argument would make sense to me—*only* if there were no subcontracting provision in the agreement. The subcontracting provision, however, has been in a series of agreements for many years and I take it to mean what it says. The word "shutdown" does not mean that the Company can achieve the shutdown by contracting out the work. The fact that "liquidation" and "shutdown" are used in the disjunctive does not mean that the shutdown may be achieved by subcontracting out the work. To my mind, "liquidation" is the sale of assets and "shutdown" is a cessation of operations. Neither term, however, in my view, renders void the subcontracting provision of this agreement. Apparently, the Company may have had this interpretation in mind when it concluded the subcontracting agreement with Technair Packaging Laboratories by stating that the agreement shall be null and void, if for any reason, the Company cannot close its shipping facilities in the Bronx, New York.

The Arbitrator's remedy permitted LeMur to make the former employees whole through either reinstatement or payments of back wages.

## Law

In reviewing an arbitrator's award, a court does not investigate the issues in contention *de novo*, but, rather, determines whether the arbitrator's award "draws its essence from the collective bargaining agreement." *Steelworkers v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 597, 80 S.Ct. 1358, 1361, 4 L.Ed.2d 1424 (1960). "Only where there is manifest disregard of the agreement, totally unsupported by principles of contract construction and the law of the shop, may reviewing courts disturb the award." *U.F.I. Razor Blades v. District 65*, 99 LRRM 2676, 2677 (S.D.N.Y.1978), *aff'd*, 610 F.2d 1018 (2d Cir.1979). A court reviewing an arbitrator's interpretation of a contract may not refuse to enforce the arbitrator's award because the court would have reached an alternative construction of the contract at issue. As long as the arbitrator's interpretation is drawn from the contract, "the courts have no business overruling him because their interpretation of the contract is different. . . ." *Steelworkers, supra*, 363 U.S. at 599, 80 S.Ct. at 1362. *See* 9 U.S.C. § 10.

The "sub-contracting," "no moving," and "shutdown" clauses which the Arbitrator was required to interpret in this case do not fit together easily, and the Arbitrator was entitled to define the reach of each clause and the context in which it would apply. In doing so he could rely on his own expertise, the relevant bargaining history, and the past practices of the company and the industry. *See Local U. No. 135 v. Dunlop T & R Corp.*, 391 F.2d 897 (2d Cir.1968); *U.F.I. Razor Blades, supra.* In reaching his conclusion in this case, the Arbitrator drew upon the "essence" of the contract by recognizing the distinctions among the contested terms that were inherent in the contract. The Arbitrator did not, as LeMur alleges, ignore the terms of the "shutdown" provision and effectively eliminate it from the contract. The Arbitrator, rather, effectively harmonized the co-existence of the clauses, by eliminating the contradiction in the contract that would exist if the complete subcontracting of the company's operations were deemed a "shutdown." The company's view that contracting out all work is equivalent to a shutdown would create an incompatibility between the remedies available to the workers under the subcontracting and shutdown clauses. By recognizing the logical distinction between contracting and shutting down that is inherent in the con-

tract, the Arbitrator made the clauses at issue compatible. In so doing he relied on the very essence of the contract, and the Arbitrator's decision will therefore be enforced.

**Conclusion**

The Arbitrator's award will be enforced, and in the event that issues pertaining to enforcement arise, the parties will abide by the arbitration requirement in the contract.

The clerk is directed to enter judgment dismissing the case.

IT IS SO ORDERED.