**QUICK & REILLY, INC., Petitioner,**

v.

**Richard O. JACOBSON, Respondent.**

**No. 88 CIV 8783 (LBS).**

United States District Court,
S.D. New York.

May 25, 1989.

Wilson, Elser, Moskowitz, Edelman & Dicker, New York City, Edward J. Boyle, Jeffrey A. Sims, of counsel, for petitioner.

Carney, Hudson, Williams, Blackburn & Grask, Des Moines, Iowa, John D. Hudson, of counsel, and Breed, Abbott & Morgan, New York City, James Zirin, Abner Zelman, of counsel, for respondent.

## OPINION

SAND, District Judge.

Quick & Reilly, Inc. ("Quick & Reilly") commenced a special proceeding in state court to vacate an arbitration award, which action was removed by defendant to this Court. Defendant by way of counterclaim seeks to confirm the award and to recover costs and sanctions pursuant to Fed.R. Civ.P. 11. Both parties have moved for summary judgment.

Richard O. Jacobson maintained a sizeable brokerage account at Quick & Reilly's San Diego brokerage office, which was liquidated after a margin call on October 20, 1987. Prior to liquidation, the branch manager of this Quick & Reilly office had a conversation with Mr. Jacobson concerning what action would satisfy the maintenance call and result in the account not being liquidated. The branch manager testified at the arbitration proceeding as to this conversation and also testified that Mr. Jacobson in fact complied with the Quick & Reilly request although there was testimony that Jacobson sought to withdraw this compliance. On the afternoon of October 20, 1987, Mr. Jacobson's portfolio was liquidated on the order of Leo C. Quick, Jr., Chairman of the Board and Chief Executive Officer of Quick & Reilly. Jacobson's subsequent demands for reinstatement of the account went unheeded and on November 24, 1987, Mr. Jacobson initiated arbitration proceedings pursuant to the rules of the New York Stock Exchange.

The arbitration was held after the parties had engaged in depositions and an exchange of documents. Two days of hear-

ings were held during which time the panel heard expert testimony as well as fact witnesses. Following the hearing, the panel requested and received memoranda concerning damages. The record of the arbitration proceedings reflects that a knowledgeable and experienced panel, including two members of the securities industry and three attorneys, meticulously examined the evidence and the claims of the parties.

The arbitration panel awarded Jacobson $1,850,170.30 plus interest. The panel wrote no opinion and did not make detailed findings.

Quick & Reilly seeks to vitiate the arbitration award urging that it was entitled to liquidate the margin account at its discretion. Quick & Reilly also contends that the panel's damage award indicates that the panel construed the Margin Agreement to give the client a ten-day grace period not intended by or contained in that agreement and that such a determination exceeded the arbitrators' authority.

We note that N.Y.Civ.Prac.L. & R. § 7511(b)(1)(iii), pursuant to which Quick & Reilly seeks to vacate the award, and § 10(d) of the Federal Arbitration Act, 9 U.S.C. § 10(d) (1970), contain virtually identical provisions, so that no significant choice of law question is presented. The New York statute provides that an arbitration award may be vacated if "an arbitrator, or agency or person making the award exceeded his power or so imperfectly executed it that a final and definite award upon the subject matter submitted was not made." It is Quick & Reilly's claim that the panel exceeded its authority by interpreting the margin agreement in a manner that did not give it "the right at any point in time with or without notice to liquidate the account." Tr. at 6 (Apr. 19, 1989) (argument on motion for summary judgment).

Although Quick & Reilly of necessity frames its contention in terms of arbitrators having exceeded their authority, the claim is in fact nothing more than a claim that the arbitrators reached an erroneous decision. Mr. Quick testified before the arbitrators as to his belief that he had the right to liquidate the account during the tumultuous hours of the October 1987 crash. The panel, having been fully briefed on this issue by counsel and having heard the testimony concerning the agreements reached by Mr. Jacobson and the Quick & Reilly branch manager, concluded otherwise.

If Quick & Reilly is correct that arbitrators are not free to conclude that an account was liquidated improperly in light of evidence such as was adduced here of an explicit agreement not to do so if certain conditions were met, then the entire force of New York Stock Exchange and similar arbitration proceedings is undermined significantly.

Quick & Reilly's claim that the arbitrators improperly granted a ten-day grace period after a margin call is also meritless. It is predicated on the amount of the award. Jacobson had argued to the panel that damages for wrongful liquidation are calculated by the highest interim price reached by the various securities within a reasonable period of time and that a ten-day period was a reasonable time. The panel, making adjustments reflective of its close scrutiny and comprehension of the issues, adopted this contention in making its award. There is simply no basis to convert this circumstance into a claim that a ten-day grace period was given by the arbitrators in excess of their authority.

■ In sum, this Court concludes that Quick & Reilly had a full and fair determination of its claims before a New York Stock Exchange arbitration panel. No challenge—other than vague and unfortunate aspersions as to the lack of sophistication of Iowans and their inability to appreciate the chaotic state of the market during the October 1987 crash—is made to the composition of the panel or to the manner in which the proceedings were conducted. Quick & Reilly's claim, although couched in the statutory language of an excess of authority, is simply a challenge to the correctness of the panel's determination. The law is clear that such a challenge will not

lie[1] and indeed is antithetical to the very nature and purpose of arbitration—to obtain an expeditious, efficient and definitive resolution of controversies. *Shearson/American Express v. McMahon*, 482 U.S. 220, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987).

The motion of Quick & Reilly to set aside the arbitration award is denied and the motion by Jacobson to confirm the award is granted.

### Rule 11 Sanctions

■ More troublesome than the decision on the motions to vacate or confirm the arbitration award is Jacobson's application for costs and sanctions pursuant to Rule 11. "Of all the duties of the judge, imposing sanctions on lawyers is perhaps the most unpleasant." Schwarzer, *Sanctions Under the New Federal Rule 11—A Closer Look*, 104 F.R.D. 181, 205 (1985).

There are two components to this application. First, Jacobson notes that throughout this proceeding, the interest charged on margin accounts has ranged from 10¼% to 11⅝% while the arbitration award bears interest at 9%. Consequently, Jacobson alleges, Quick & Reilly has had the use of a substantial interest rate spread since November 4, 1988, the date of the award. Jacobson seeks recompense for this loss.

Counsel for Quick & Reilly contests Jacobson's allegations concerning the alleged spread between the 9% interest which the arbitration award carries and the higher rate of interest charged on margin accounts. Counsel argues that under Generally Accepted Accounting Principles, it was required to reserve its potential exposure to Jacobson under the arbitration award and was therefore not in a position to "play the spread." Petitioner Quick & Reilly, Inc.'s Supplemental Memorandum of Law in Further Opposition to Respondent Richard O. Jacobson's Motion for Sanctions at 8 ("Q & R Supp. Memo."). There is, however, a significant economic advantage to having cash on hand even if subject to a balance sheet reserve entry as distinguished from an expenditure of funds. However, we agree with counsel for Quick & Reilly that a 9% return is a respectable one and that Jacobson has not shown that the delay in collection of the arbitration award in fact caused him to incur greater interest costs.

The second aspect of Jacobson's application relates to legal fees. Jacobson's counsel asserts:

"A cursory reading of the Petition demonstrates that this action has been filed for an improper purpose and that, after reasonable inquiry, a competent attorney could not form a reasonable belief as a matter of law that the pleading is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law. See *Eastway Construction Corp. v. City of New York*, 762 F.2d 243 (2d Cir.1985) [, *cert. denied*, [484 U.S. 918] 108 S.Ct. 269 [98 L.Ed.2d 226] 1987)]. There is *no* existing law ... that could possibly warrant the relief sought by Quick and Reilly."

Memorandum of Law in Support of Respondent's Motion for Sanctions at 2.

Jacobson also cites other factors that he believes enhance his entitlement to a Rule 11 award. These include the fact that Quick & Reilly was represented in this proceeding by the same counsel as appeared at the arbitration hearing. *Cf. Tedeschi v. Smith Barney, Harris Upham & Co., Inc.*, 579 F.Supp. 657, 661 (S.D.N.Y. 1984) (Weinfeld, J.) (determination prior to amendment of Rule 11), *aff'd*, 757 F.2d 465 (2d Cir.), *cert. denied*, 474 U.S. 850, 106 S.Ct. 147, 88 L.Ed.2d 122 (1985). Jacobson also cites the size and sophistication of Quick & Reilly's firm of 300 people.

---

1. A court does not review an arbitration award *de novo*. See *Livingston v. Nestle–LeMur Co.*, 607 F.Supp. 1337, 1340 (S.D.N.Y.1985). Rather, a court should show deference to an arbitrator's findings, interpretations, and award, even if the results reached are not results with which the court necessarily agrees. *See, e.g., United Paperworkers International Union v. Misco, Inc.*, 484 U.S. 29, 108 S.Ct. 364, 98 L.Ed.2d 286 (1987); *United States Steel and Carnegie Pension Fund v. Dickinson*, 753 F.2d 250 (2d Cir.1985).

Jacobson's most vigorously pressed claim for sanctions relates to the nature of the proceeding itself and to the incongruity of a member of the security industry seeking so substantially to undermine the arbitration process that that industry has championed so vigorously. *See Rodriguez de Quijas v. Shearson/American Express, Inc.,* — U.S. —, 109 S.Ct. 1917, 104 L.Ed.2d 526 (1989) (decided subsequent to proceedings herein); *Shearson/American Express, Inc. v. McMahon, supra.*

We believe, however, that Quick & Reilly's ability to challenge the arbitration award is in no way diminished because it is one member of an industry that as a whole, strongly favors arbitration. Were there merit to Quick & Reilly's claim, we would not penalize it because of the overall position of the security industry.

In response, counsel for Quick & Reilly renews its protestations that the arbitration award was indeed subject to attack because it "deviate[d] from the parties' agreement either by rewriting it, and fostering a result inconsistent with public policy, or departing from the 'essence' of their agreement." Q & R Supp. Memo. at 5–6. Moreover, Quick & Reilly's counsel asserts that, even if erroneous, the position it took was colorable and was not intended to harass, cause delay [2] or needlessly increase the cost of litigation.

> Counsel for Quick & Reilly asserts that: Moreover, since arbitration awards are not self-executing, Jacobson would have to go to court—as he, in fact, did in Iowa [3]—to confirm the arbitration award and convert it to a judgment. Jacobson thus necessarily would have to deal with Quick & Reilly's objections to the award, and resolve their dispute through judicial intervention. (Footnote added).

Q & R Supp. Memo. at 7.

We reject this reasoning insofar as it assumes that judicial intervention is inevitable. When an arbitration award is not subject to valid legal challenge, it should be honored without the need for either party to resort to the courts.

We find that Jacobson is entitled to recover a portion of the reasonable attorneys' fees incurred directly as a result of this proceeding. Recognizing that Rule 11 was not intended to abrogate the general American rule that each party is to bear its own legal expenses, we believe that the claims advanced by Quick & Reilly were so totally devoid of merit as to warrant imposition of Rule 11 sanctions. Perhaps counsel acted in subjective good faith; we have no reason to believe that this is not so, but this is no longer the criterion for Rule 11 determinations.

The zeal of an attorney who lost the arbitration proceeding cannot overcome the lack of merit in the claims and the fact that objective counsel should have recognized the futility of the challenge.

Jacobson seeks to recover $53,892.39 as its fair and reasonable fees and expenses. Counsel for Quick & Reilly urges that this is excessive. There is, of course, no challenge to the hourly rate of $110 per hour for partner time which counsel asserts "in 1987 was a reasonable and customary fee for legal services in Des Moines, Iowa[,]" nor to a time charge of $15 per hour for research assistants or law clerks. Aff't John D. Hudson (Apr. 25, 1989) ¶¶ 3–4.

We agree that the amount sought is excessive and is in any event not an appropriate basis for a Rule 11 award. We exclude the time spent on matters we regard as extraneous to the suit itself, *e.g.,* small amounts of time devoted to matters relating to press coverage. We have already denied costs in connection with discovery matters. Recompense for the amount of $7,666.49 is sought for the services rendered and expenses incurred by Breed Ab-

---

**2.** Prior to the making of these motions, Quick & Reilly sought to conduct discovery and take Jacobson's deposition. By endorsement dated February 7, 1989, this Court granted Jacobson's motion for a protective order and quashed the notice of deposition but denied Jacobson's application for fees.

**3.** No recovery is sought by Jacobson for time spent in connection with the litigation he initiated in Iowa.

**28**

bott & Morgan, who served as local counsel for Jacobson, but there is no itemization of what these services entailed and this claim is disallowed.

We believe that an award of $25,000 would "award that portion of a defendant's attorney's fee thought reasonable to serve the sanctioning purpose of the Rule." *International Shipping Co., S.A. v. Hydra Offshore, Inc.*, 875 F.2d 388, 392 (2d Cir. 1989). We award Rule 11 damages in that amount to Jacobson against counsel for Quick & Reilly.[4]

### Conclusion

We are mindful of the admonition of the Court of Appeals for the Second Circuit that

> Rule 11 sanctions should be applied only where 'after reasonable inquiry, a competent attorney could not form a reasonable belief that the pleading is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification or reversal of existing law.' *Eastway Construction Corp. v. City of New York*, 762 F.2d 243, 254 (2d Cir.1985).

*Mercado v. U.S. Customs Service*, 873 F.2d 641, 646 (2d Cir.1989).

We believe that pursuant to this standard, Rule 11 sanctions in the amount stated above are appropriate in this proceeding.

SO ORDERED.

---

**4.** In response to the Court's inquiry, counsel advises us that at all times Quick & Reilly acted pursuant to its advice and that counsel bears the sole responsibility for the proceedings. Q & R Supp. Memo. at 12.