753 F.2d 250
 6 Employee Benefits Ca 1450
 UNITED STATES STEEL AND CARNEGIE PENSION FUND, a
Pennsylvania corporation, and the United States Steel
Corporation Plan for Employee Pension Benefits (Revision of
1950), an employee pension benefit plan, Plaintiffs-Appellants,
v.
John DICKINSON, an individual and Norman Christiansen, an
individual, Defendants-Appellees.
 No. 370, Docket 84-7621.
 United States Court of Appeals,
Second Circuit.
 Argued Oct. 30, 1984.
Decided Jan. 23, 1985.
 
 James T. Carney, Pittsburgh, Pa. (Richard F. Lerach, Pittsburgh, Pa., John McN. Cramer, Reed Smith Shaw & McClay, Pittsburgh, Pa., of counsel), for plaintiffs-appellants.
 Carl T. Hayden, Elmira, N.Y. (Ziff, Weiermiller, Learned & Hayden, Elmira, N.Y., of counsel), for defendants-appellees.
 Before FEINBERG, Chief Judge, LUMBARD and MESKILL, Circuit Judges.
 LUMBARD, Circuit Judge:
 
 
 1
 United States Steel and Carnegie Pension Fund ("Pension Fund") and the United States Steel Corporation Plan for Employee Pension Benefits (Revision of 1950)[1] appeal from a June 20, 1984 judgment of the District Court for the Western District of New York, Michael A. Telesca, Judge, denying their motion for summary judgment in their action to vacate an arbitration award under 9 U.S.C. Sec. 10(d) (1982) and granting the cross-motion of Norman Christiansen and John Dickinson for summary judgment confirming the award. The arbitration award, rendered March 13, 1984, sustained the Christiansen-Dickinson claims for 70/80 retirement pensions under United States Steel Corporation's pension plan. The Pension Fund argues on appeal that the arbitrator exceeded his authority by granting those enhanced pensions to claimants who failed to satisfy the plan's explicit requirements. Because we agree with Judge Telesca that the arbitrator acted within the scope of his authority in sustaining the pension claims based on his construction of the pension plan's requirements, we affirm.
 
 
 2
 Until recently, U.S. Steel operated a fabrication plant at Elmira Heights, New York, where it employed Norman Christiansen and John Dickinson as draftsmen. In an attempt to cut costs at the unprofitable plant, U.S. Steel, in October 1982, began to contract out most of its drafting work there. In addition, on April 22, 1983, the company announced its intention to discontinue bidding on new work to be performed at the plant until it secured contract concessions from its employees. U.S. Steel also began reducing its workforce, including its contingent of draftsmen. It laid off Christiansen on April 22, 1983 and Dickinson on May 5, 1983, attributing its actions to lack of work. As of May 1983, U.S. Steel, which had previously employed 28 draftsmen at Elmira, employed no more than 5 draftsmen and by October 1983, it employed no non-management draftsmen there. Finally, in December 1983, after concession negotiations with workers had collapsed, U.S. Steel announced that it would permanently close the Elmira plant as of April 1, 1984.
 
 
 3
 After being laid off, both Christiansen and Dickinson, each of whom had worked for U.S. Steel for over 30 years, elected to retire. Their retirements took effect May 31, 1983 and June 30, 1983, respectively. Each applied for special early retirement pensions available to those who qualify for 70/80 retirement under the United States Steel Corporation Plan for Employee Pension Benefits (Revision of 1950).
 
 
 4
 Section 2.6(a) of the pension plan's governing rules limits eligibility for 70/80 retirement to claimants who meet an age and service requirement, about which there is no dispute here, and who fit into one of several specified categories. Christiansen and Dickinson initially claimed to qualify, under section 2.6(a)(4), as claimants whose retirements are approved by U.S. Steel under "mutually satisfactory conditions." However, U.S. Steel concluded that the uncertain future of the Elmira plant precluded it from ruling, in the Spring of 1983, that the claimants' retirements served the company's best interests, and, accordingly, it rejected Christiansen's claim on April 25, 1983, and Dickinson's on June 15, 1983.
 
 
 5
 Christiansen and Dickinson appealed U.S. Steel's denial of their pension claims to the Pension Fund, the organization responsible for administering the pension plan. In letters dated June 8, 1983 and July 5, 1983, the Pension Fund affirmed the denial of the claims.
 
 
 6
 Christiansen and Dickinson then invoked the pension plan's arbitration clause, arguing that they qualified for 70/80 retirements under several provisions of section 2.6(a). Arbitrator James R. Beilstein held a hearing on October 10, 1983, and in an opinion dated March 13, 1984, he sustained the Christiansen-Dickinson claims based on section 2.6(a)(2)(ii), which applies to certain laid off workers "whose return to active employment is declared unlikely" by their employing company. The arbitrator noted that U.S. Steel had not formally declared that it was unlikely to recall the claimants, but he concluded that a retiree is also eligible under the section, without regard to any formal pronouncement by his employer, if the circumstances, including his employer's actions, indicate that his return to work is actually unlikely. Based on U.S. Steel's decision to contract out drafting work and to stop bidding on new projects, its extensive layoffs and the testimony at the arbitration hearing that a department supervisor had informed another laid off draftsman in June 1983 that he was unlikely to be recalled, the arbitrator found that the company should have declared "that a return to employment is or was unlikely ... at the time the claimants applied for 70/80 Retirement."
 
 
 7
 The Pension Fund then filed suit in the district court in an attempt to vacate the arbitration award under 9 U.S.C. Sec. 10(d). It argued that the arbitrator, in sustaining the pension claims, disregarded the eligibility requirements of section 2.6(a)(2)(ii) and thereby exceeded his authority under the following provision of the pension plan:
 
 
 8
 The arbitrator shall have authority only to decide the question pursuant to the provisions of the pension plan, but shall not have authority in any way to alter, add to or subtract from any of such provisions.
 
 
 9
 Upon cross-motions for summary judgment, Judge Telesca, on June 20, 1984, affirmed the award based on his conclusion that the arbitrator construed the plan's eligibility requirements in a manner consistent with his authority.
 
 
 10
 On appeal, the Pension Fund reiterates its argument that the arbitrator exceeded his authority by reading out of section 2.6(a)(2)(ii) its requirement that a claimant's employer declare his return to work unlikely. Consequently, the Pension Fund contends, the award is invalid and the district court should have vacated it. We disagree.
 
 
 11
 We believe our decision in Advance Publications, Inc. v. Newspaper Guild, 616 F.2d 614 (2d Cir.1980), governs this case. There we held that if an arbitrator offers even a barely colorable justification for this decision, we will not vacate it on the basis of a claim he exceeded his authority by misinterpreting the parties' contract. That holding reflects our recognition that arbitrators must have broad authority to interpret the contracts they apply. Id. at 617. It also reflects the narrow reading we have consistently accorded our authorization, under the Federal Arbitration Act, to vacate arbitration awards on the ground that the arbitrator has overstepped his power. Andros Compania Maritima, S.A. v. Marc Rich & Co., 579 F.2d 691, 703 (2d Cir.1978).
 
 
 12
 As appellants note, the parties' inclusion here of a clause expressly limiting the arbitrator's authority to amend the literal language of their contract distinguishes this case somewhat from Advance Publications, which makes no mention of such a clause. We, however, do not believe that distinction requires the application of a different standard of review. Even in the absence of such an explicit clause, an arbitrator's decision, to be valid, must draw "its essence" from the terms of the parties' agreement. See United Steelworkers of America v. Enterprise Wheel & Car Corp., 363 U.S. 593, 597, 80 S.Ct. 1358, 1361, 4 L.Ed.2d 1424 (1960). In this case, the parties have made explicit what normally is implicit, but they have not withdrawn from the arbitrator the power he must have, if the arbitration is to be meaningful, to interpret, in a rational manner, ambiguous provisions of the parties' agreement.
 
 
 13
 Because arbitrator Beilstein has provided more than a colorable justification for his decision, we conclude that he acted within the scope of his power. Section 2.6(a)(2)(ii) requires that a claimant's return to work "be declared unlikely by his employing company," but it is ambiguous because it fails to specify what form that declaration must take or how explicit it must be. The arbitrator, out of necessity, resolved that ambiguity, concluding that, as a whole, U.S. Steel's actions, taken in preparation for closing the Elmira plant, constituted a declaration sufficient to satisfy the requirements of Sec. 2.6(a)(2)(ii). The record indisputably supports that conclusion. Any other would have permitted U.S. Steel to delay indefinitely the payment of benefits to which the retired employees were entitled. In addition, the arbitrator's conclusion preserves the independent significance of Sec. 2.6(a)(2)(ii), which, absent some provision for an implied declaration, would effectively duplicate Sec. 2.6(a)(4) under which eligibility for 70/80 retirement depends on employer approval.
 
 
 14
 We affirm the judgment of the district court confirming arbitrator Beilstein's decision.
 
 
 
 [1]
 The United States Steel Corporation Plan for Employee Pension Benefits (Revision of 1950) is a retirement plan under the terms of 29 U.S.C. Sec. 1002 (1982). It covers employees of U.S. Steel, including the appellees. The United States Steel and Carnegie Pension Fund is a Pennsylvania corporation charged with administering the pension plan