**Pauline JIH**

v.

**LONG & FOSTER REAL ESTATE, INC., et al.**

**Civ. No. K–88–1603.**

United States District Court,
D. Maryland.

Aug. 6, 1992.

Ralph Gordon, Edmund W. Law, Gordon & Simmons, Frederick, Md., for plaintiff.

Timothy G. Casey, Rockville, Md., and Pamela A. Bresnahan, Semmes, Bowen & Semmes, Washington D.C., for Long & Foster Real Estate, Inc.

FRANK A. KAUFMAN, Senior District Judge.

In this case, plaintiff, Pauline Jih, names as defendants Long & Foster Real Estate, Inc. (Long & Foster), the Manager of Long & Foster's Frederick office, Yvonne Jernigan, and the Manager of Long & Foster's New Homes Division, Joseph Rogowski. In her complaint, plaintiff alleges that she introduced Lancaster Craftsman Builders, Inc. to Long & Foster with regard to a subdivision project known as Middletown South, that Long & Foster wrongfully transferred that project from its Frederick office to its New Homes Division, and that Long & Foster wrongfully chose another Long & Foster sales associate, a white, to become the on-site agent for the project instead of plaintiff, a Chinese. Plaintiff asserts that Long & Foster's decision to choose an agent other than plaintiff to handle the Lancaster project was racially motivated.

Plaintiff's complaint includes five counts: Count I—violation of 42 U.S.C. § 1981; Count II—breach of contract; Count III—interference with prospective contract; Count IV—misrepresentation; and Count V—intentional infliction of emotional distress. Plaintiff presses Count II only against defendant Long & Foster. Pursuant to an agreement of the parties, and by Order of this Court, plaintiff and defendant Long & Foster arbitrated the breach of contract count,[1] and the Arbitration Panel

---

1. Counts I and V were stayed pending the outcome of the arbitration of Count II. Plaintiff withdrew claims III and IV. Subject matter exists pursuant to 28 U.S.C. § 1343 as to Count

awarded to plaintiff $29,220.13. Thereafter, Long & Foster filed a motion to vacate the Arbitration Panel's Finding and Final ORder in which the Panel awarded damages to plaintiff. In an Order dated January 15, 1992, this Court denied the motion of Long & Foster to vacate that award and granted plaintiff's motion to confirm it. Herein, after fully reconsidering those motions, this Court reaffirms its said January 15, 1992 rulings.

## I.

Mrs. Jih's Independent Contractor Agreement with Long & Foster called for the parties to arbitrate any disputes under that contract, such as that embodied in Count II, before a panel selected by the Frederick County Board of Realtors; however, that latter entity declined to arrange the arbitration. Consequently, the parties submitted the Count II breach of contract claim to a private arbitration panel consisting of three persons, one selected by plaintiff, one selected by defendant Long & Foster, and the third, a neutral arbitrator, selected by the two already selected. That panel conducted several days of hearings and considered the following claims:

> ▮ ... respondent failed to provide assistance, advice, instruction and full cooperation to its agent, [Jih], in accordance with Independent Contractor Agreement and that such failure resulted in [Jih's] not being able to procure the listing of Lancaster Craftsmen Builders, Inc. for general brokerage nor [2] was she duly considered for the position of "on-site agent" for the Lancaster project once it was underway.
>
> Further ... [3] ... because Long and Foster violated its Independent Contractor Agreement with [Jih] and also violated their own policy on new homes ... [Jih] lost faith with Long & Foster, Inc. and ultimately left their employ because she could not trust them to keep their agreements.

ARBITRATION FINDING (Liability), Defendant's Motion to Vacate, Exhibit C. Pursuant to the agreement of both parties,

the panel bifurcated the proceedings to consider separately the issues of liability and damages.

The panel determined that Long & Foster breached the contract in two ways: first, "Mrs. Jih was not adequately advised as to how to best secure the Lancaster Project for General Brokerage"; and second, that "Long & Foster violated their own stated policy regarding the handling of New Homes ... in that consensus was not reached as to how to best handle the New Homes Project." ARBITRATION FINDING (Prejudgment Interest) and FINAL ORDER, Defendant's Motion to Vacate, Exhibit B. The panel also concluded that those two breaches were material insofar as they related to Jih's compensation for the Lancaster Homes referral, and that they were the proximate cause of Jih's resignation and ultimate loss of referral commissions. On that basis, the panel determined that Jih was entitled to referral commissions from the Lancaster project. On the other hand the panel decided that "Long & Foster was not under any contractual obligation to offer [Jih] the position of on-site agent of the Lancaster project." *Id.*

Long & Foster requested that the panel modify its decision as to liability. Specifically, Long & Foster sought to have the panel clarify whether the Lancaster listing would or would not have gone to the General Brokerage if there had been no breach of contract by Long & Foster. The panel, in its "Response to Motion to Modify and Continue," stated, "In its deliberations, the panel was unanimously convinced that the preponderance of the evidence indicated that the listing for the Lancaster project would have gone to the New Homes Division and not the General Brokerage even if Long & Foster had adequately advised [Jih] as to how to best secure the project for the General Brokerage." Defendant's Motion to Vacate, Exhibit D. The panel also reiterated its earlier finding that the two breaches were the proximate cause for Jih's resignation and her consequent loss of referral commissions, but added that the

I; pendent jurisdiction is present as to Counts II    and V. *See* n. 3 *infra.*

commissions would have come from the referral of the Lancaster Project to the New Homes Division. *Id.*, ¶¶ 2, 1.

Long & Foster, in its subsequent "Legal Memorandum on Computing Damages" submitted to the Arbitration Panel, observed that the panel had found the breaches material only as they related to any possible claim which Jih may have for referral commissions on the Lancaster project. Long & Foster noted that the panel had not determined, however, that Long & Foster breached any agreement relating to referral commissions. The only link, argued Long & Foster, between Jih's claims for referral fees and the breaches found by the panel were the panel's determinations that Jih was forced to resign and that the resignation took place when Mrs. Jih was under severe emotional distress. Thus, Long & Foster asserted that even if it be assumed *arguendo* that plaintiff was "forced" to resign because of that severe emotional distress, still plaintiff was not entitled to the award of commissions because emotional distress type of damages are not recognized by Maryland law in the context of this case.

Long & Foster also contended before the panel that the questions of whether or not plaintiff was "forced to resign" and whether or not she suffered "severe emotional distress" were beyond the scope of the agreed submission to the panel. Finally, Long & Foster asserted that under Long & Foster's policy, commissions are not earned until sales contracts are ratified. Because plaintiff left Long & Foster before any sales contracts from the Lancaster project were ratified, she was not entitled to those commissions, regardless of her reason for leaving, argued Long & Foster.

The panel stated the following in its "Response to Long & Foster's Legal Memorandum":

> In empowering the Panel to resolve this dispute, the parties are considered to have clothed the Panel with the authority to grant adequate monetary relief where the grievance has merit. In this regard, the Arbitration Panel has the authority to award money damages for contract violations, even if the contract does not specifically provide such remedy.
>
> . . . .
>
> The panel found that the breaches of contract were the proximate cause of [Jih's] loss of referral commissions. Where a resignation was made under severe emotional stress, it may be treated as an involuntary or coerced discharge for purposes of arbitral review. As the Panel found that the breaches of contract were the proximate cause for [Jih's] resignation and ultimate loss of referral commissions, the Panel has held that [Jih] is entitled to referral commissions from the Lancaster Project.

RESPONSE TO LONG & FOSTER'S LEGAL MEMORANDUM, Defendant's Motion to Vacate, Exhibit E, at 1, 2 (citations omitted). In setting the damage amount, the panel adopted the amounts for referral commissions stipulated by the parties. The panel filed its Final Order on March 6, 1991. Long & Foster filed in this Court its motion to vacate the award on April 12, 1991.

## II.

In its motion to vacate, Long & Foster essentially renews the arguments it made to the Arbitration Panel. In so doing, Long & Foster relies upon Section 10 of the Federal Arbitration Act as well as federal common law. Specifically, Long & Foster contends that the panel: 1) exceeded its powers in rendering the Final Order; 2) refused to hear evidence pertinent and material to the Final Order; and 3) manifestly disregarded the law in rendering the Final Order.

As a threshold matter, the question arises whether this Court's review of the arbitrator's award should be conducted under the provisions of the Federal Arbitration Act or under corresponding Maryland law. The parties appear to presuppose the applicability of the Federal Act. Section 2 of that Act provides that it is applicable only to maritime transactions or contracts involving interstate commerce. *See also* 9 U.S.C. § 1 (defining "commerce" as "commerce among the several States or with

foreign nations"). In *Bernhardt v. Polygraphic Co. of America,* 350 U.S. 198, 76 S.Ct. 273, 100 L.Ed. 199 (1956), the Supreme Court narrowly construed section 3 of the Arbitration Act, and stated that that section permits a federal court to stay proceedings where any of the issues is referable to arbitration, and concluded that section 3 "reaches only those contracts covered by §§ 1 and 2." *Id.* at 202, 76 S.Ct. at 276. In so concluding, the Court observed that if section 3 were read to pertain to matters other than those involving maritime or interstate commerce, it would have the effect of "invading the local law field." Accordingly, the Supreme Court cautioned the lower federal courts to read the section narrowly to avoid that issue. *Id.* However, in *Moses H. Cone Hospital v. Mercury Construction Corp.,* 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983), the Supreme Court observed:

> The Arbitration Act is something of an anomaly in the field of federal-court jurisdiction. It creates a body of federal substantive law establishing and regulating the duty to honor an agreement to arbitrate, yet it does not create any independent federal-question jurisdiction under 28 U.S.C. § 1331 ... or otherwise. Section 4 provides for an order compelling arbitration only when the federal district court would have jurisdiction over a suit on the underlying dispute; hence, there must be diversity of citizenship or some other independent basis for federal jurisdiction before the order can issue.

*Id.* at 25 n. 32, 103 S.Ct. at 942 n. 32. In *Barbier v. Shearson Lehman Hutton Inc.,* 948 F.2d 117 (2d Cir.1991), the Second Circuit, citing *Cone,* wrote, "The FAA [Federal Arbitration Act] applies when there is federal subject matter jurisdiction, *i.e.,* diversity jurisdiction, and when the contract calling for arbitration 'evidence[es] a transaction involving interstate commerce.' " *Id.* at 120 (citation omitted). The requirement that there be federal subject matter jurisdiction has been met in this case; nevertheless, whether the second require-

ment—that the transaction involve interstate commerce—has been met is open to question.

Defendant Long & Foster is a Virginia corporation which does business in Maryland. Plaintiff is a citizen of Maryland and all other defendants involved in the underlying dispute either reside in and/or do business in Maryland.[2] The property which is the subject of the dispute is located in Maryland and the activities of plaintiff and defendants which are the subject of the dispute took place in Maryland. Thus, it is not obvious that this particular transaction affected "interstate commerce" as that term is used in the Arbitration Act.

The Fourth Circuit has commented upon, in a Federal Arbitration Act setting, the sufficiency of the evidence of the interstate nature of a transaction. *See Maxum Foundations, Inc. v. Salus Corp.,* 779 F.2d 974, 978 n. 4 (4th Cir.1985). In *Maxum,* a party asserted on appeal that in the absence of affidavits or other documentary evidence of interstate activity, there was no record evidence of interstate commerce sufficient to apply the Federal Arbitration Act. Although Judge Phillips noted in *Maxum* that the Act does not require such evidence, he observed that in the procedural and factual context of that case, once one party asserts that the transaction is within the scope of the Act, the burden is upon the other party to come forward with evidence to rebut jurisdiction under the federal statute. *Id.*

In the within case, both parties apparently assume that the Federal Arbitration Act is applicable and thus, at least implicitly, have agreed to be bound by that Act's provisions for judicial review. However, for reasons discussed *supra,* it seemingly makes no difference whether this Court applies federal law or Maryland law in reviewing the arbitrators' award.

### III.

The standard of review of an award made under the Federal Arbitration

---

**2.** Diversity jurisdiction is not present because plaintiff and one or more of the individual

defendants are citizens of Maryland. *See* n. 1 *supra.*

Act is extremely narrow. *See United States Steel & Carnegie Pension Fund v. Dickinson*, 753 F.2d 250, 252–53 (2nd Cir. 1985). A court may vacate an award only upon the grounds specified in the Act itself, or if the arbitrators acted in manifest disregard of the law, or if the award is ambiguous or otherwise incomplete or contradictory. The exceptions to confirmation of awards are strictly limited to avoid frustrating the fundamental purpose of arbitration, *i.e.*, quick dispute resolution and avoidance of the expense and delay of court proceedings. *See Transit Casualty Co. v. Trenwick Reinsurance Co., Ltd.*, 659 F.Supp. 1346, 1351 (S.D.N.Y.1987), *aff'd*, 841 F.2d 1117 (2nd Cir.1988). Further, the party moving to vacate the award bears the burden of proof, and "[t]he showing required to avoid summary confirmation is high." *Barbier v. Shearson Lehman Hutton, Inc.*, 752 F.Supp. 151, 159 (S.D.N.Y.1990), *aff'd in part, rev'd in part on other grounds*, 948 F.2d 117 (1991).

Section 10 of the Federal Arbitration Act states the grounds for the vacation by a reviewing court of an arbitration award. That section reads, in pertinent part:

(a) In any of the following cases the United States Court in and for the district wherein the award was made may make an order vacating the award upon the application of any party to the arbitration—

(1) Where the award was procured by corruption, fraud, or undue means.

(2) Where there was evident partiality or corruption in the arbitrators, or either of them.

(3) Where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced.

(4) Where the arbitrators exceeded their powers, or so imperfectly executed them that mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a) (Supp. II 1990). Long & Foster relies upon subsections 10(a)(3) and (4) as grounds for vacating the arbitration award. In addition, Long & Foster points to "manifest disregard of the law," a common-law basis for judicial review of arbitrators' awards.

Section 3–202 of the Courts and Judicial Proceedings Article of the Annotated Code of Maryland provides that "[a]n agreement providing for arbitration under the law of the State confers jurisdiction on a court to enforce the agreement and enter judgment on an arbitration award." Md.Cts. & Jud. Proc.Code Ann. § 3–202 (1989). Section 3–224 of that Article enumerates the grounds upon which a court may vacate an arbitration award. That section states, in pertinent part:

(b) The Court shall vacate an award if:

(1) An award was procured by corruption, fraud, or other undue means;

(2) There was evident partiality by an arbitrator appointed as a neutral, corruption in any arbitrator, or misconduct prejudicing the rights of any party;

(3) The arbitrators exceeded their powers;

(4) The arbitrators refused to postpone the hearing upon sufficient cause being shown for the postponement, refused to hear evidence material to the controversy, or otherwise so conducted the hearing, contrary to the provisions of § 3–213, as to prejudice substantially the rights of a party....

Md.Cts. & Jud.Proc.Code Ann. § 3–224(b) (1989). A comparison of the Maryland statute with the Federal Arbitration Act reveals that the grounds for vacating arbitration awards are quite similar. Thus, it would not seem to make any material difference whether this Court applies the federal standards for review of arbitral awards or those standards found in the state statute.

IV.

■ A. *Whether the arbitrators exceeded their power in awarding damages to plaintiff.* Long & Foster contends that the panel exceeded its power in awarding

damages based upon referral commissions to plaintiff because, in so doing, the panel awarded plaintiff tort damages which had nothing to do with the breaches of contract found by the panel. That is, argues Long & Foster, the only connection which the panel drew between the breaches of contract and the damages awarded was the panel's finding that the breaches forced plaintiff to resign under severe emotional distress. Thus, Long & Foster asserts, the arbitration panel awarded plaintiff tort damages on the breach of contract claim, which the panel was not empowered to do.

The language used by the Arbitration Panel in its breach of contract findings may—at least facially—sound in tort. The panel did state that "[w]here a resignation was made under severe emotional stress, it may be treated as an involuntary or coerced discharge for purposes of arbitral review." [3] RESPONSE TO LONG & FOSTER'S LEGAL MEMORANDUM, Defendant's Motion to Vacate, Exhibit E, at 2. Nevertheless, if one looks beyond the words used and examines the causal chain found by the panel, it becomes rather clear that the panel determined that, but for defendant's breaches, plaintiff would have continued in her employment and would have, in the ordinary course, been entitled to receive referral commissions from the Lancaster project.

While "coerced" or "constructive" discharge superficially appears to be a breach by the employee, it is in fact a breach by the employer. That is, the law, discarding form for substance, "recognizes the concept of 'constructive discharge' " and treats an involuntary resignation that was coerced by the employer as a discharge. Stated alternatively, "constructive discharge occurs ... when an employer deliberately causes or allows the employee's working conditions to become 'so intolerable' that the employee is forced into an involuntary resignation." *Beye v. Bureau of Nat'l Affairs*, 59 Md.App. 642, 649, 651,

477 A.2d 1197, *cert. denied*, 301 Md. 639, 484 A.2d 274 (1984).

One court, in applying the "exceeded its powers" standard under section 10(d), has stated:

> [I]f an arbitration panel rules on issues not presented to it by the parties, it has exceeded its authority and the award must be vacated. However, Congress has indicated a strong preference for enforcing arbitration agreements, and it is well settled that a reviewing court's power to vacate an award is severely limited so that an award may be set aside only under the very narrow circumstances enumerated in § 10, or if it is "irrational" or "manifestly disregards the law."
>
> In determining whether an arbitration agreement covers a particular issue, all doubts must be resolved in favor of arbitration. Any issue that is "inextricably tied up with the merits of the underlying dispute" may properly be decided by the arbitrator.

*Dighello v. Busconi*, 673 F.Supp. 85, 87 (D.Conn.1987) (citations omitted), *aff'd*, 849 F.2d 1467 (2d Cir.1988). Long & Foster contends that the panel's basis for its damage award was that plaintiff's resignation came about as a result of severe emotional distress and, therefore, the panel awarded damages based upon tort principles, rather than contract principles. Thus, argues Long & Foster, because the only issue presented for arbitration was whether Long & Foster had breached its contract with plaintiff, the panel's tort-based award was beyond the scope of the panel's powers.

As framed by the Arbitration Panel, however, the breach of contract issue also included the contention that "because Long and Foster violated its Independent Contractor Agreement ... and also violated their own policy on new homes ... [Jih] lost faith with Long & Foster, Inc. and ultimately left their employ because she could not trust them to keep their agreements." ARBITRATION FINDING (Lia-

---

**3.** The causal connection drawn by the panel is the following: (1) But for Long & Foster's breaches, plaintiff would not have suffered severe emotion distress resulting in her involuntary termination of employment; and (2) Had plaintiff not terminated her employment, she would have earned referral commissions from the Lancaster project.

319

bility), Defendant's Motion to Vacate, Exhibit C. In that context, plaintiff's departure, the reasons therefor, and any damages plaintiff may have suffered as a result, were "inextricably tied up with the merits of the underlying dispute." *See Dighello*, 673 F.Supp. at 87. Therefore, the Arbitration Panel was within its power to make a damage award in that regard.

■ B. *Whether the panel refused to hear evidence pertinent and material to the controversy.* Contrary to Long & Foster's assertion, the panel did not specifically refuse to hear evidence requested by Long & Foster, but rather refused to permit *plaintiff's* counsel to cross examine on the issue of constructive discharge. Upon objection by counsel for Long & Foster, the panel chairperson refused to permit plaintiff's counsel to continue his line of questioning, stating, "I don't think that there has been any groundwork made for constructive discharge." Defendant's Motion to Vacate, Exhibit I, at 160. Thereafter, counsel for Long & Foster urged the panel to stand by that ruling. *Id.* at 162.

Long & Foster's real complaint, it would seem, is that the panel, after refusing to permit cross examination by plaintiff's counsel on the issue of constructive discharge because no groundwork had been laid for it, went on to award damages based on that theory. Thus, although Long & Foster was not immediately prejudiced because it was not denied the opportunity to present evidence, Long & Foster would appear, in essence, to contend that the panel engaged in fundamental unfairness when one of its ultimate determinations was diametrically inconsistent with a ruling it made during the hearing.

As one court has observed, "[B]oth the statutory language and the case law demonstrate that the touchstone in considering claims of arbitrator misconduct is 'fairness'...." *Reichman v. Creative Real Estate Consultants, Inc.*, 476 F.Supp. 1276, 1285 (S.D.N.Y.1979). However, section 10(c)

cannot be read ... to intend that every failure to receive relevant evidence con-

stitutes misconduct which will require the vacation of an arbitrator's award.

... In an arbitration case a court cannot act as a legal screen to comb the record for technical errors in the receipt or rejection of evidence by arbitrators, who in most cases are laymen. A fair accommodation between the words of the statute and the characteristic nature of arbitration would require that such an error must be one that is not simply an error of law, but which so affects the rights of a party that it may be said that he was deprived of a fair hearing.

*Newark Stereotypers' Union No. 18 v. Newark Morning Ledger Co.*, 397 F.2d 594, 599 (3rd Cir.) (footnote omitted), *cert. denied*, 393 U.S. 954, 89 S.Ct. 378, 21 L.Ed.2d 365 (1968). In *Transit Casualty Co. v. Trenwick Reinsurance Co., Ltd.*, 659 F.Supp. 1346 (S.D.N.Y.1987), *aff'd*, 841 F.2d 1117 (2d Cir.1988), it was contended that the neutral arbitrator refused to receive a submission by one of the parties. The district court observed, however, that "[e]ven assuming arguendo that [the neutral arbitrator] was not justified in refusing the submission, Transit was not prejudiced inasmuch as both parties submitted comprehensive briefs covering all the relevant issues at the conclusion of the hearings." *Id.* at 1354.

In this case, Long & Foster pressed the substance of its "refusal to hear evidence" argument before the panel itself. *See* Defendant's Motion to Vacate, Exhibit E, Long & Foster's Legal Memorandum on Computing Damages, at 3–6. As did the parties in *Transit Casualty*, both parties submitted to the Arbitration Panel comprehensive briefs addressing the question at the close of the hearing. Under those circumstances the Arbitration Panel's reliance upon a constructive discharge theory in awarding damages, following its mid-hearing ruling, did not result in a denial of fundamental fairness, nor was Long & Foster prejudiced within the meaning of section 10(c) of the Federal Arbitration Act. That is because there was full opportunity given—and indeed conclusive evidence was presented—by both sides during the arbitration hearing concerning the reason for

plaintiff's resignation and those reasons included the emotional stress under which she was placed because she felt that she was being wronged by what the Panel has determined to be breaches of conduct by Long & Foster.

■ C. *Whether the Arbitration Panel manifestly disregarded the law in awarding damages to plaintiff.* Long & Foster points out that under Section 31 of the Second Restatement of the Law of Contracts, emotional distress damages are not properly awardable in a contract action unless the breach was wanton or reckless and caused bodily harm and the defendant had reason to know at the time the contract was made that breach would cause mental suffering for reasons other than mere pecuniary loss. *See White v. Diamond,* 390 F.Supp. 867 (D.Md.1974). In this case, Long & Foster argues that the Arbitration Panel manifestly disregarded the law by seemingly awarding "emotional distress" damages in a contract action in which the requisite factual predicate was not established.

■ " 'Manifest disregard of the law' by arbitrators is a judicially-created ground for vacating their arbitration award, which was introduced by the Supreme Court in *Wilko v. Swan,* 346 U.S. 427, 436–37, 74 S.Ct. 182, 187–88, 98 L.Ed. 168 (1953). It is not to be found in the federal arbitration law." *Merrill, Lynch, Pierce, Fenner & Smith, Inc. v. Bobker,* 808 F.2d 930, 933 (2nd Cir.1986). The Second Circuit has described "manifest disregard" as follows:

> Although the bounds of this ground have never been defined, it clearly means more than error or misunderstanding with respect to the law. The error must have been obvious and capable of being readily and instantly perceived by the average person qualified to serve as an arbitrator. Moreover, the term 'disregard' implies that the arbitrator appreciates the existence of a clearly governing

legal principle but decides to ignore or pay no attention to it.... Judicial inquiry under the 'manifest disregard' standard is ... extremely limited. The governing law alleged to have been ignored by the arbitrators must be well defined, explicit, and clearly applicable.

*Id.* at 933–34 (citations omitted).

Judge Phillips, writing for the Fourth Circuit, similarly has stated:

> A legal interpretation of an arbitrator may only be overturned where it is in manifest disregard of the law. An arbitration award is enforceable 'even if the award resulted from a misinterpretation of law, faulty legal reasoning or erroneous legal conclusion,' and may only be reversed 'when arbitrators understand and correctly state the law but proceed to disregard the same."

*Upshur Coals Corp. v. UMWA, Dist. 31,* 933 F.2d 225, 229 (4th Cir.1991) (quoting *George Day Constr. Co. v. United Brotherhood of Carpenters, Local 354,* 722 F.2d 1471, 1479 (9th Cir.1984) and *San Martine Compania de Navegacion, S.A. v. Saguenay Terminals Ltd.,* 293 F.2d 796, 801 (9th Cir.1961)).

In the view of this Court, the Arbitration Panel did not misapply the law for awarding contract damages based upon emotional distress; nor did it erroneously conclude that it could award such damages. But even if the arbitrators so did, that does not add up to, under the reasoning set forth in *Bobker* and *Upshur,* "manifest disregard of the law" so as to justify a vacation by this Court of the panel's damage award.

## IV.

For the reasons stated in this Opinion, this Court will enter an Order of even date herewith confirming the award of the Arbitration Panel and entering judgment in favor of plaintiff and against defendant Long & Foster as to Count II.[4]

---

**4.** The parties have been afforded the opportunity to brief the issues of the possible entry by this Court of a final judgment as to Count II under Federal Civil Rule 54(b) from which an immediate appeal would seemingly lie; and the preclusive effect, *vel non,* of such judgment in connec-

tion with the trial of the issues presented by Counts I and V and the possibility of an interlocutory appeal pursuant to 28 U.S.C. § 1392(b) concerning the preclusive effect issue. With regard to these questions, this Court will file a

### ORDER

Judgment is hereby entered for plaintiff against defendant Long & Foster in the amount of $29,220.13, plus interest at the rate of 6% per annum, granted from March 6, 1991. It is so ORDERED this 6th day of August, 1992.

further opinion after all briefing and argument    have been concluded.