Adol OWEN–WILLIAMS, Jr., Plaintiff,

v.

MERRILL LYNCH, PIERCE, FENNER AND SMITH, INC., Defendant.

Civ. No. PJM 94–1287.

United States District Court,
D. Maryland.

Dec. 8, 1995.

Adol T. Owen–Williams, Jr., Chevy Chase, MD, Pro Se.

Kathleen Pontone, Margaret A. Jacobsen, Miles & Stockbridge, Baltimore, MD, for defendant.

## OPINION

MESSITTE, District Judge.

The Court considers the Motion of Plaintiff Adol Owen–Williams, Jr. to Modify or Vacate the Arbitration Award rendered in connection with his complaint against his former employer, Defendant Merrill Lynch, Pierce, Fenner and Smith, Inc. Based on a review of the entire record, the Court will deny the motion and enter judgment on the arbitration award.

### I.

In January 1992 Plaintiff, an African–American, was discharged from his position as a financial consultant in the Rockville, Maryland, office of Defendant, an international firm offering a variety of financial services. On May 16, 1994, Plaintiff sued Defendant in this Court, alleging racial discrimination and retaliation in employment under 42 U.S.C. § 2000e *et seq.* and 42 U.S.C. § 1981, as well as intentional infliction of emotional distress under state law.[1]

Soon after suit was filed, Defendant moved to stay the proceedings and compel arbitration on the basis of a provision in Plaintiff's application for registration as a financial consultant.[2] By letter dated August 15, 1994, Plaintiff himself advised the Court that:

---

1. Plaintiff's suit was filed through counsel who eventually withdrew from these proceedings. In the extensive arbitration proceedings that intervened, Plaintiff acted *pro se*. In all correspondence with the Court since the case returned to court following arbitration, Plaintiff has continued to act *pro se*. Although Plaintiff asked for the appointment of an attorney by reason of his *in forma pauperis* status, and, although the Court initially appointed a member of the Bar of this Court to act in that capacity, the Court recently reconsidered the matter and withdrew the appointment. The Court determined, given the nature of the complaint and Plaintiff's obvious ability to articulate his position, that he could proceed without counsel. *See Whisenant v. Yuam*, 739 F.2d 160, 163 (4th Cir.1984).

2. Plaintiff's application for registration was made on a "Uniform Application for Security Industry Registration or Transfer," otherwise known as a "U–4" form. This form, ostensibly bearing Plaintiff's signature, dated March 7, 1991, provides that:

   I agree to arbitrate any dispute, claim or controversy that may arise between me and my firm . . . that is required to be arbitrated under

As I initially suspected, and it has since been brought to my attention, because I was an employee of a brokerage firm that is a member of the New York Stock Exchange, any grievances that arise from my employment would have to be resolved through binding arbitration with the National Association of Securities Dealer (sic).

Plaintiff thus asked the Court to grant Defendant's Motion to Stay and to Compel Arbitration. As the Court eventually learned, on June 10, 1994, Plaintiff himself had filed a statement of claim with the NASD.

Following the Court's order of stay, the parties embarked upon arbitration which consumed 19 days, consisting of 2 sessions per day, extending from November 8, 1994, to February 20, 1995. The claims Plaintiff submitted to arbitration were precisely those he presses in this litigation. In the words of the NASD arbitrators, Plaintiff "alleged over a prolonged period of time he was discriminated against, racially harassed, mentally tormented and subsequently unjustly terminated," as well as "maliciously slandered" by various of Defendant's representatives. Defendant's position before the arbitrators was that Plaintiff "was terminated for unsatisfactory attitude," that he was "often argumentative and confrontational," "prone to angry outbursts," "shouting and cursing" and "physical violence including pounding on doors and banging on desks." [3]

At the close of the proceedings, in response to an express inquiry by the arbitrators, Plaintiff stated that he felt he had had a "fair and equal opportunity to be heard."

On March 27, 1995, on the basis of the pleadings, testimony and evidence, the arbitrators issued an award denying Plaintiff's claims against Defendant in all respects. Soon after, Defendant's counsel filed a motion with the Court asking that judgment be entered on the arbitration award and that the litigation be dismissed. Not having heard from Plaintiff, the Court on April 25, 1995 dismissed the case.

## II.

On May 12, 1995, Plaintiff sent a letter to the Court alleging, among other things, that he had never agreed to binding arbitration and asking the Court to reconsider its dismissal. Despite the tardiness of Plaintiff's communication, it appeared to the Court that there may have been a misunderstanding on the part of Plaintiff (as well as Defendant's counsel) regarding the appealability of the arbitration award. Thus, a letter from defense counsel to the Court, a copy of which was sent to Plaintiff, suggested that, per Rule 627b of the NASD Rules of Arbitration, its awards would "be deemed final and not subject to review or appeal." Following receipt of Plaintiff's letter of May 12, however, the Court checked with counsel for the NASD who confirmed that Rule 627 referred only to review or appeal within the NASD context. In no sense, according to NASD counsel, did the rule preclude judicial review and arbitration award to the extent that the law might allow.

In consequence, the Court wrote to the parties stating that:

A party can always seek judicial review of an arbitration award. However, that review is limited. The merits of the underlying controversy submitted to arbitration are not subject to judicial review. A court will set aside an arbitration award only if it is invalid—where for instance the award was procured by corruption or fraud or the arbitrators were guilty of egregious misconduct. Otherwise, the Court will enforce an arbitration award that is valid.

By Order entered June 1, 1995, the Court vacated its order dismissing the case and determined to treat Plaintiff's May 12, 1995,

the rules, constitutions, or by-laws of the organizations with which I register, as indicated in Item 10 as may be amended from time to time. Item 10 of the U–4 indicates, inter alia, that Plaintiff was to be registered with the National Association of Securities Dealers (NASD) and the New York Stock Exchange (NYSC), both of which have rules requiring employee disputes to be submitted to arbitration.

3. At no time during the proceedings did Plaintiff argue that he had never agreed to arbitration. On the contrary, on November 16, 1994, Plaintiff executed a separate voluntary Uniform Submission Agreement to arbitrate.

letter as a Motion to Modify or Vacate the Arbitration Award.

### III.

In support of his Motion to Vacate, Plaintiff accuses Defendant and its counsel of repeatedly engaging in and openly admitting "BLATANT FRAUD" (emphasis in original). Among other things, Plaintiff complains that some documents have been withheld, others falsified, and finally that "UNALTERED transcripts of the hearing will show that the Plaintiff continuously protested to the arrogant bias of the arbitration panel in favor of the defense who was blatantly trying to suppress as much damaging testimony against them as possible" (emphasis in original). Plaintiff apparently contends that he was coerced into making statements before the arbitrators that contradict the position he now takes before the Court.

Not surprisingly, Defendant rejects Plaintiff's arguments wholesale.

### IV.

█ Under the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.*, federal courts will enforce valid agreements to arbitrate. A number of courts have held the U–4 registration form enforceable as an agreement to arbitrate. *See Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991); *Zandford v. Prudential–Bache Securities, Inc.*, 1994 WL 150918 (D.Md.1994); *Bender v. A.G. Edwards & Sons, Inc.*, 971 F.2d 698 (11th Cir.1992); *Alford v. Dean Witter Reynolds, Inc.*, 939 F.2d 229 (5th Cir.1991); *McGinnis v. E.F. Hutton and Co., Inc.*, 812 F.2d 1011 (6th Cir.) *cert. denied*, 484 U.S. 824, 108 S.Ct. 87, 98 L.Ed.2d 49 (1987). Arbitration extends to Title VII claims, *Bender v. A.G. Edwards & Sons, Inc., supra,* as well as claims for intentional infliction of emotional distress, *Id.; see also Friedman v. Hamilton Investments, Inc.*, 1992 WL 130122 (N.D.Ill.1992). Accordingly, assuming the validity of the U–4 agreement in this case, the types of claims presented here are unquestionably arbitrable.

█ To the extent that a party is entitled to challenge the validity of an agreement to arbitrate, the time to raise that issue is before the matter goes to arbitration, not after. Otherwise a party could hold back, await the outcome of the arbitration, and then blithely render it null simply by challenging the validity of the proceedings. Failure to challenge arbitrability in timely fashion and participating in the arbitration proceedings, in other words, will result in waiver of the right to object. *International Longshoremen's Assoc., AFL–CIO v. West Gulf Maritime Assoc.*, 594 F.Supp. 670 (S.D.N.Y. 1984); *see also* D.J. Penofsky, Annotation, "Participation in Arbitration Proceedings as Waiver of Objections to Arbitrability," 33 A.L.R.3d 1242 (1970).

█ Plaintiff, who willingly submitted these clearly arbitrable claims to arbitration and who made no protest during 19 separate days of arbitration proceedings, without a doubt waived any right he may have had to contest the agreement to arbitrate.

### V.

█ A district court's review in determining whether to vacate an arbitration award is limited to the grounds set forth in 9 U.S.C. § 10; *Wall Street Associates, L.P. v. Becker Paribas, Inc.*, 27 F.3d 845 (2d Cir. 1994). In the case at bar, given the tenor of Plaintiff's objections, the only grounds arguably relevant under that statute would be that the award was "procured by corruption, fraud or undue means," 9 U.S.C. § 10(a), or that "there was evident partiality or corruption in the arbitrators," 9 U.S.C. § 10(b). In either event, the burden of proof is upon the party seeking to vacate the award. *Jih v. Long & Foster Real Estate, Inc.*, 800 F.Supp. 312 (D.Md.1992); *Shahmoon Industries, Inc. v. United Steelworkers of America, AFL–CIO*, 263 F.Supp. 10 (D.N.J.1966). Because an arbitration award is entitled to a presumption of correctness, the burden upon the challenger is a heavy one. *Id.; see also Federated Department Stores, Inc. v. J.V.B. Industries, Inc.*, 894 F.2d 862 (6th Cir.1990). In particular, where fraud is the basis of the challenge, the party attacking the award is required to establish the fraud by clear and

convincing evidence. *Foster v. Turley*, 808 F.2d 38 (10th Cir.1986). Mere allegations of impropriety will not suffice to justify vacating the order; the record must suggest a bona fide basis for the challenge. *See Legion Insurance Co. v. Insurance General Agency, Inc.*, 822 F.2d 541 (5th Cir.1987), *reh. denied* 828 F.2d 772.

Against this backdrop, Plaintiff's challenge never gets off the ground. His broadside assertions of "blatant fraud" by the Defendant and Defendant's counsel and "arrogant bias of the arbitration panel" are totally unsupported and a review of the entire record shows them to be totally unsupportable. Questions of credibility of witnesses and conflicts in testimony, which are in essence what Plaintiff appears to be complaining of, are for the arbitrators to resolve, not the reviewing court. *Id.* The Court has no authority to simply substitute its own judgment for that of the panel. *Glasser v. American Federation of Musicians of U.S. and Canada*, 354 F.Supp. 1 (S.D.N.Y.), *aff'd* 487 F.2d 1393 (2d Cir.1973). In short, Plaintiff has offered the Court no legal justification for disturbing the arbitrator's award. The matter is therefore at an end. Plaintiff has had his day in court, as he himself conceded, a "fair and equal opportunity to be heard." [4]

The Court will deny Plaintiff's motion and will enter judgment in favor of Defendant on the arbitration award. [5]

A separate Order implementing this decision will issue.

---

*FINAL ORDER*

Upon consideration of Plaintiff's Motion to Modify or Vacate the Arbitration Award and Defendant's Opposition thereto, it is for the reasons stated in the accompanying Opinion, this 8th day of December, 1995

ORDERED that the NASD arbitration award of March 27, 1995, involving the parties is hereby ACCORDED FULL FORCE and EFFECT; and it is further

ORDERED that JUDGMENT on said award is hereby ENTERED in favor of Defendant and against Plaintiff; and it is further

ORDERED that Plaintiff's Complaint is hereby DISMISSED WITH PREJUDICE.

---

4. Actually Plaintiff has had two opportunities to be heard, once by the arbitrators and earlier by the Equal Employment Opportunity Commission. The EEOC, which initially investigated the case at Plaintiff's instance, determined after hearing that Plaintiff was terminated from his employment for good cause, finding no indication that race was a factor in the termination. EEOC determinations, it may be noted, have been received in evidence in employment discrimination cases. *See e.g. Barfield v. Orange County*, 911 F.2d 644, 649–50 (11th Cir.), *cert. den.* 500 U.S. 954, 111 S.Ct. 2263, 114 L.Ed.2d 715 (1991).

5. Defendant asks the Court to enter judgment not only in its own favor but also in favor of Carl R. Meyer, resident manager of the office where Plaintiff worked. It appears that Plaintiff at one point tried to add Meyer as a party to the Merrill

Lynch arbitration, then changed his mind and filed a separate statement of claim against him. The arbitration award in this case in fact refers to a single "respondent," which can only mean Merrill Lynch. Meyer, accordingly, is not a party to these proceedings and the Court is without authority to enter any ruling as to him.

To the extent, however, that Plaintiff's claim against Meyer parallels his claim against Defendant, it would be a candidate for issue or claim preclusion in time. Should Plaintiff proceed with the action against Meyer and should it ultimately be determined that Plaintiff did so without good cause (including going forward despite the apparent res judicata or collateral estoppel effect of the case), he would of course be subject to appropriate sanctions.